UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

RYAHN KHAN, an infant by his mother and natural
Guardian DR. TEHMINA HAQUE, and DR. TEHMINA
HAQUE individually,

**DECLARATION IN
SUPPORT OF MOTION
TO DISMISS**

                          Plaintiffs,

08 CV 5246 (NRB)

     -against-

AMERICAN AIRLINES, INC.,

                          Defendant.
----------------------------------------------------------X

     David S. Rutherford, an attorney duly admitted to practice law in the United States District

Court for the Southern District of New York, hereby deposes and says subject to the penalties of

perjury:

     1.    I am a member of the law firm of RUTHERFORD & CHRISTIE, LLP, attorneys for

the defendant, American Airlines, Inc. I am fully familiar with the facts and circumstances of this

matter based upon my review of the file maintained by my offense in defense of this litigation.

     2.    This Declaration is submitted in support of American Airlines' Motion for Dismissal,

pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, seeking a dismissal of the

plaintiffs' Complaint in its entirety with prejudice, and for such other and further relief as this Court

deems just and proper This motion is submitted in lieu of an Answer based on the insufficiencies

of the plaintiffs' Complaint.

     3.    The plaintiffs' are alleging state law claims of intentional and negligent infliction of

emotional distress. Plaintiffs also allege civil rights violations and violations under the Air Carrier

Access Act. The plaintiffs seek compensatory damages and punitive damages.

4.    As more fully explained in the accompanying Memorandum of the Law, the plaintiffs' Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure as any claim for emotional distress related to an airline service is expressly preempted under the Airline Deregulation Act.  In any event, American Airlines did not breach its own policy, nor were defendants actions unreasonable under the circumstances.  Thus, the state law claims for emotional distress must fail.    Further, plaintiffs' claims under Section 1983 are improper as American Airlines is not a governmental entity.  In addition, plaintiffs have no right to a private cause of action under the Air Carrier Access Act.

5.    Annexed hereto as Exhibit "A" and Exhibit "B" are the only documents relevant to this action, which is relied upon and cited in defendant's Memorandum of Law, submitted in support of defendants' FRCP 12(b)(6) motion.  The documentation is as follows:

A.    Plaintiff's initial Summons and Complaint.

B.    American Airlines Conditions of Carriage and Peanut Policy

Dated: New York, New York
      August 14, 2008

David S. Rutherford (DR 8564)

Law Offices of Kenneth M. Mollins, P.C.
Attorneys for Plaintiffs
425 Broadhollow Road, Suite 215
Melville, New York 11747
(631) 608-4100

*Lush*
*June 3rd 2008*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
RYAHN KHAN, an infant by his mother and natural
Guardian DR. TEHMINA HAQUE, and DR. TEHMINA
HAQUE individually,

               Plaintiffs,

    -against-

AMERICAN AIRLINES, INC.

               Defendant.

------------------------------------------------------------x

Index No.: *10765* /08
Filed on: *JUNE 2ND* /08

**SUMMONS**

To the above-named Defendant:

    **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or if the Complaint is not served with this Summons, to serve a Notice of Appearance, on the Plaintiffs' attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after service is complete if this Summons is not personally delivered to you within the State of New York) or in any other manner; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

    Plaintiffs designate New York County as the place of trial. The basis of venue is the County wherein Defendant has its principal business office. Defendant's office address is care of CT Corporation System, 111 8th Avenue, New York, N.Y.

Dated: Melville, New York
      May *30* , 2008

               Law Offices of Kenneth M. Mollins, P.C.
               Attorneys for Plaintiffs
               By: _____
                    Kenneth M. Mollins, Esq.
               425 Broadhollow Road, Suite 205
               Melville, New York11747
               (631) 608-4100

To:    American Airlines, Inc.
        C/o CT Corporation System
        111 8th Avenue
        New York, NY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

RYAHN KHAN, an infant by his mother and natural
Guardian DR. TEHMINA HAQUE, and DR.
TEHMINA HAQUE individually

               Plaintiffs,

    -against-

AMERICAN AIRLINES CORPORATION,

         Defendant.


-------------------------------------------------------------------X

Index No.:_____/08


**COMPLAINT**

Plaintiffs Ryahn Khan, an infant by his mother and natural guardian Dr. Tehmina Haque and Dr. Tehmina Haque individually ("Plaintiffs"), by their attorneys, The Law Office of Kenneth M. Mollins, P.C. respectfully allege as follows:

### PARTIES

1. At all times relevant herein Plaintiff Ryahn was, and is, an infant individual residing in the County of Suffolk, City and State of New York.

2. At all times relevant herein Plaintiff Dr. Tehmina Haque was, and is, a individual residing in the County of Suffolk, City and State of New York.

3. Upon information and belief, at all relevant times herein Defendant American Airlines, Inc. ("Defendant") was, and is, a corporation duly organized and existing under the laws of the State of New York.

4. Upon information and belief, at all relevant times herein Defendant was, and is, a foreign corporation duly authorized to conduct business in the State of New York.

5. Upon information and belief, at all relevant times herein Defendant was, and is, a corporate entity engaged in the business of operating a passenger airline for domestic airline travel.

## FACTS

6. In or about February 2008, Plaintiff Dr. Haque purchased five airline tickets from Defendant for herself and her family, including Plaintiff Ryahn her four year old son, to travel for a family vacation from New York's John F. Kennedy Airport to California's LAX airport.

7. The flight was for April 18, 2008 – flight number 133.

8. Plaintiff Dr. Haque purchased the airline tickets from Defendant knowing that Defendant had a policy of not serving packaged nuts aboard its flights.

9. This policy was of critical importance to Plaintiff since Plaintiff's four year old son has a severe life threatening anaphylactic allergy to treenuts and to nuts. In addition to suffering from asthma which increases the risk of anaphylactic reaction.

10. In or about February 2008, Plaintiff Dr. Haque called placed a telephone call into Defendant's corporate office to advise Defendant of her family's April 18, 2008 flight and her son's life threatening treenut and nut allergy so as to insure that the flight would be nut free, as safe as possible with minimal risk

and therefore safe for her son's travel. Plaintiff Dr. Haque called again one week before flight to confirm the information detailed above.

11. The agent with whom Plaintiff Dr. Haque spoke again in the week before their flight advised Plaintiff that she was making a record of Plaintiff's son's allergy for the April 18, 2008 flight 133 crew.

12. On April 18, 2008, Plaintiff Dr. Haque arrived with her family, including her son Ryahn, at JFK airport to board flight 133 to LAX. Plaintiff approached the boarding gate and again advised Defendant's agent of her son's life threatening tree nut and peanut allergy.

13. The boarding gate agent checked the computer and assured Plaintiff Dr. Haque that no nuts of any kind would be served on the flight.

14. Having been reassured by Defendant's agent that no nuts of any kind would be served during the flight, Plaintiff and her family, including her four year old son, boarded flight 133 to LAX.

15. Still concerned for her son's safety, and in an excess of caution, Plaintiff Dr. Haque advised the first flight attendant she encountered upon boarding flight 133 of her son's life threatening tree nut and peanut allergy.

16. The flight attendant appeared concerned and inquired where Plaintiff and her family would be sitting on the plane.

17. Once seated and settled, the flight attendant with whom Plaintiff Dr. Haque had spoken upon boarding the plane approached Plaintiff, knelt at Plaintiff's seat and inquired as to the severity of Plaintiff's son's nut allergy.

18. Plaintiff Dr. Haque advised the flight attendant that her son's allergy was very serious and life threatening inasmuch his reaction to nuts was anaphylactic. Moreover, Plaintiff advised the fight attendant that there was no way of telling how much of an exposure to nuts was needed before a reaction was triggered.

19. Plaintiff Dr. Haque advised the flight attendant of her great concern in being in an enclosed aircraft, with recirculated air, some thirty thousand feet in the air with no immediate access to emergent medical care.

20. The flight attendant seemed to share Plaintiff's concern; advised Plaintiff Dr. Haque that she was very aware of a child who also had a food allergy and so understood the severity of the situation. The flight attendant then advised Plaintiff that she would advise the Purser of Plaintiff's situation.

21. Sometime after the flight attendant left to advise the Purser of Plaintiff's son's allergy, the Purser approached Plaintiff Dr. Haque and advised Plaintiff that no nuts of any kind would be served in the main cabin, but that he absolutely had to serve nuts in First Class and inquired if that would be okay.

22. The Purser made it clear that Plaintiff really had no choice as First Class passengers allegedly get very upset if they don't get served nuts aboard the flight and they had an absolute right to be sold and/or served nuts.

23. Given the fact that Plaintiff was really given no choice, Plaintiff Dr. Haque advised the Purser that she did not really now how to respond to him, especially since other Defendant representatives had stated that no nuts of any kind would be served during the flight.

24. Shortly thereafter, the gate attendant who had previously advised Plaintiff D. Haque that no nuts would be served during the flight, boarded the plane with two additional flight attendants one of whom was named "Marci".

25. Marci came charging down the plane aisle shouting in a loud and abusive voice "Alright, which one of you is the allergy victim?" This loud and conspicuous demonstrative display occurred despite the fact that 14 CFR 382 Section 382.45 dictates "individual safety briefings for qualified individuals with a disability shall be conducted as inconspicuously and discreetly as possible".

26. Plaintiff's four year old son Ryahn became agitated and stunned upon hearing Marci's loud and aggressive inquiry. Plaintiff Dr. Haque immediately directed Marci's focus away from Plaintiff's son and fielded Marci's inquiry.

27. Marci advised Plaintiff Dr. Haque in a loud and aggressive tone that it did not matter what anyone else had told Plaintiff but that she would be serving nuts in the main cabin, despite the allergy complained of and despite prior assurances.

28. Stunned, Plaintiff Dr. Haque inquired whether or not any announcement would be made to the crew and passengers. Plaintiff made this inquiry as she had a recent previous experience with Jet Blue Airlines where two announcements were made to the crew and passengers that a passenger had a severe nut allergy; advised all that no nuts would be served during the flight and requested that all passengers please refrain from opening up any products containing nuts during the flight. In fact, Jet Blue eliminated any

snack containing nuts from their selection in accordance with the law and in protecting their disabled passenger.

29. Marci responded to the Plaintiff sarcastically and in a belittling tone "exactly what do you want us to say - don't buy the nuts?"

30. Marci further advised Plaintiff Dr. Haque that "we cannot discriminate against all these people for just one person."

31. During the same time that Marci was making the comments noted above, another flight attendant was reading to Plaintiff Dr. Haque from a piece of paper which seemingly was some sort of disclaimer from Defendant concerning the service of nut products during the flight.

32. Also at the same time that Marci was making the comments noted above and a second flight attendant was allegedly reading some sort of disclaimer, the gate attendant who had boarded the plane was trying to advise Marci that he was the one who assured Plaintiff Dr. Haque that no nuts would be served during the flight. Marci however ignored the gate attendant's comments.

33. After reading the alleged disclaimer, that flight attendant sarcastically stated "I don't understand what the difference is if your child were on the playground and other children there had been eating peanut butter."

34. Interrupting Marci's tirade, Plaintiff Dr. Haque responded to the flight attendant "Thirty-five thousand feet and recirculated air," to which the flight attendant responded "Good point."

35. During this tirade and commotion, the flight attendant kept trying to reread the disclaimer to Plaintiff, despite Plaintiff Dr. Haque asking them to stop, and

inquiring of Plaintiff as to whether she understood the disclaimer.  14 CFR

382 Section 382.45 states "carrier personnel shall not require any qualified

individual with a disability to demonstrate that he or she has listened, read or

understood the information presented".

36. Plaintiff Dr. Haque, visibly upset at this point and in tears, responded that the

only thing she understood was that the attendants did not care about the well

being of her son.

37. Plaintiff's son Ryhan who heard everything that was going on and saw

Plaintiff start to cry, became upset and concerned repeatedly asking his

mother if she was alright. Plaintiff Dr. Haque's daughter also became

emotional as a result of the crew's loud and insulting demeanor towards her

brother and her mom.  This further aggravated the emotional distress of the

plaintiff Dr. Haque

38. Plaintiff, not only concerned about her son's safety imprisoned upon a plane

wherein the flight crew and attendants not only recklessly and carelessly

disregarded the health and well being of her son, but intentionally and

recklessly endangered his life, was also concerned about her son's emotional

well being as he grew more agitated about what was going on between

Plaintiff and the various flight attendants.

39. Indeed, other passengers on the plane began to show signs of disgust in

response to the scene that was being made by Defendant's flight attendants.

One passenger in row 28 stood up, confronted the flight attendants and

shouted "Doesn't this just make intuitive sense to all of you? What do you want her to do, buy all the nuts on the plane?"

40. The flight attendants completely ignored this passenger who finally sat down in disgust shaking his head.

41. Contrary to Defendant's policy of serving no nuts; contrary to the representations of Defendant's agents that were made to Plaintiff, and despite Plaintiff advising Defendant's agents of her son's life threatening allergy to treenuts, Defendant sold and/or served nuts during the flight, even though there was at least 5 other options for sale at that time.

42. For the entire flight from New York's JFK airport to California LAX airport, Plaintiff remained fearful, tense and anxious as she watched over her son's every breath and body twitch concerned that at any moment her son could have an anaphylactic reaction while imprisoned thirty-five thousand feet in the air which could result in his death in minutes.

43. Adding to Plaintiff's acute anxiety was the fact that at the tender age of four years, Plaintiff's son was not mature enough to communicate to Plaintiff the initial warning signs that could signal the beginning of an allergic reaction.

44. Plaintiff remained in a constant and heightened state of acute anxiety about her son's well being until the plane landed in California's LAX airport and Plaintiff and her family began to exit the plane.

45. While exiting the plane, the Purser advised Plaintiff to write into AA.com. Plaintiff's son responded to the comment that he would never fly American Airlines again to which one of the flight attendants replied "I don't blame you."

## **AS AND FOR A FIRST CAUSE OF ACTION**

46. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "45" above with the same force and effect as if fully set forth at length below.

47. The Defendant's agents' unreasonable and outrageous acts and actions set forth hereinabove went well beyond the scope of normal aircraft operations.

48. The Defendant's agent's unreasonable and outrageous acts and actions set forth hereinabove were beyond the scope of their authority to provide services to airline passengers.

49. The Defendant's agents' unreasonable and outrageous acts and actions set forth hereinabove were conducted intentionally and with conscious awareness of the ramifications thereof.

50. Defendant's agents' acts and actions set forth hereinabove were so abusive, unprofessional, extreme and outrageous so as to be intolerable to a civilized society.

51. Defendant's agents' acts and actions set forth hereinabove were so extreme in degree and outrageous in character so as to exceed all bounds of decency.

52. Defendant's agents' intentional, wanton and reckless acts and actions set forth hereinabove caused Plaintiff Dr. Haque severe acute anxiety; severe emotional distress and fear for the life and safety of her four year old son.

53. Defendant's intentional infliction of emotional distress caused Plaintiff Dr. Haque to suffer damages in an amount to be determined by a jury at a trial of this action.

54. Defendant's agents' acts and actions set forth hereinabove were not only intentional, but were so reckless, wanton, and malicious that it warrants an award of punitive damages in an amount to be determined by a jury at trail of this action.

## AS AND FOR A SECOND CAUSE OF ACTION

55. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "54" above with the same force and effect as if fully set forth at length below.

56. Defendant breached its own policy regarding the service of nuts during a flight with a passenger who suffers from a nut allergy by serving packaged nuts during flight 133 on April 18, 2008.

57. Defendant's breach of its own policy placed Plaintiff's son's life in danger causing Plaintiff Dr. Haque to suffer severe and acute emotional distress and concern during the entire flight.

58. As such, Defendant's breach of its own policy regarding the service of nuts during a flight with a passenger who suffers from a nut allergy resulted in Plaintiff Dr. Haque suffering damages in an amount to be determined by a jury at a trial of this action.

## AS AND FOR A THIRD CAUSE OF ACTION

59. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "58" above with the same force and effect as if fully set forth at length below.

60. In or about August 1998, the Department of Transportation declared a nut allergy a disability under the Air Carrier Access Act of 1986 – Title 49 Section 41705.

61. Accordingly, Plaintiff's son Ryahn, who has a severe, life threatening treenut allergy is considered disabled under the Air Carrier Access Act.

62. Plaintiff Dr. Haque gave Defendant multiple notices of her son's severe, life threatening tree nut and peanut allergy and the fact that he would be a passenger on Defendant's flight 133 on April 18, 2008.

63. Despite being given notice of Plaintiff's son's tree nut and peanut allergy, and despite the provisions and requirements of the Air Carrier Access Act, Defendant failed to make any accommodation for Ryahn and deliberately; wantonly and with a reckless disregard of Ryahn's life, safety and welfare, served packaged nuts throughout the entire cabin during flight 133 on April 18, 2008.

64. As a result, Defendant breached and violated Plaintiff's son's Civil Rights under 42 USC section 1983.

65. As a result of Defendant's violation of Ryahn's Civil Rights, Ryahn has been damaged in an amount to be determined at trial.

66. Furthermore, Ryahn is entitled to an award of punitive damages, in an amount to be determined at trial, as a result of Defendant's egregious conduct.

67. Plaintiff Ryahn is also entitled to an award of attorneys' fees pursuant to the Civil Rights Attorneys Fees Awards Act of 1976 in an amount to be determined at a hearing after trial, but in no event believed to be less than $25,000.00.

WHEREFORE, based upon all of the foregoing, Plaintiffs demand judgment as follows:

(a)     ON THE FIRST CAUSE OF ACTION: A monetary judgment in favor of Plaintiff Dr. Haque and against Defendant for compensatory damages in a sum to be determined after trial as well as for punitive damages in a sum to be determined by a jury at the trial of this action;

(b)     ON THE SECOND CAUSE OF ACTION: A monetary judgment in favor of Plaintiffs and against Defendant for compensatory damages in a sum to be determined after trial;

(c)     ON THE THIRD CAUSE OF ACTION: A monetary judgment in favor of Plaintiff Ryahn and against Defendant for (1) compensatory damages in a sum to be determined after trial; (2) for punitive damages in a sum to be determined by a jury at the trial of this action, and (3) for attorneys fees to be determined at

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
RYAHN KHAN, an infant by his mother and natural    Index No.:_____/08
Guardian DR. TEHMINA HAQUE, and DR. TEHMINA
HAQUE individually,

                             Plaintiffs,

           -against-                                 **VERIFICATION**

AMERICAN AIRLINES, INC.,

                           Defendant.

-----------------------------------------------------------------x
STATE OF NEW YORK  )
                     : ss:
COUNTY OF SUFFOLK  )

       I, <u>DR. TEHMINA HAQUE</u>, being duly sworn, deposes and says:

       I am one of the Plaintiffs in the within action.

       I have read the foregoing Summons and Complaint, and know the contents thereof, the same is true to my own knowledge, except as to those matters therein alleged to be on information and belief, and as to those matters I believe it to be true.

                                              _____
                                            DR. TEHMINA HAQUE

Sworn to before me this
___ day of May, 2008.

_____
    Notary Public

                   KENNETH M. MOLLINS
               Notary Public. State of New York
                 No. 02M04756250
              Qualified in Nassau County
         Commission Expires August 30, 20_16

T:\MICHELLE\LETTERS\VERIFICATION - INDIVIDUAL.DOC

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
--------------------------------------------------------------------x
RYAHN KHAN, an infant by his mother and natural          Index No.:_____/08
Guardian DR. TEHMINA HAQUE, and DR. TEHMINA
HAQUE individually,

                                   **Plaintiffs,**

             -against-

AMERICAN AIRLINES, INC.,

                                   **Defendant.**

---

# SUMMONS AND COMPLAINT

---

Attorneys for Plaintiff
425 Broad Hollow Road
Suite #215
Melville, New York  11747
(631) 608-4100
Fax No.: (631) 608-4107

---

T:\MICHELLE\BACKS.DOC

**American**Airlines`
AA.com

Home | Login | My Account | Worldwide Sites | Contact AA | FAQ    Search...    ████

Reservations ▶
Travel Information ▶
Net SAAver & Special Offers℠
AAdvantage® ▶
Products & Gifts ▶
Business Programs & Agency Reference ▶
About Us ▶

Featuring:

Search By:
Price *and* Schedule


✱ **DealFinder**™
Travel Made Easy


*Our*
**Lowest Fare**
Guarantee


Earn **250 Miles**
at AA.com/Hotel

*Hertz*
Discounts & Bonus Miles!

## Conditions Of Carriage

**Notice to American Airlines passengers | American Airlines Conditions of Carriage**

████

**Notice to American Airlines passengers**
Your ticket and the following Conditions of Carriage constitute the contract between you, the passenger, and American Airlines, Inc. American Eagle ("American") and apply to all transportation provided by American (including transportation on codeshare partners) between points in the United States (including Puerto Rico and the U.S. Virgin Islands). Foreign air transportation is governed by applicable tariffs on file with the Department of Transportation.

American is responsible for transportation on flight segments operated by American and transportation provided by codeshare partners on codeshare itineraries. American will act as an agent to issue tickets, check baggage, and book reservations for transportation via other carriers which have interline agreements with American. Other carriers may have different terms and conditions applicable to their flights. These may be obtained directly from the other carriers.

Please read your contract carefully.

American Airlines, Inc.
P.O. Box 619616, MD 5435
DFW Airport, TX 75261-9616

**American Airlines Conditions of Carriage**
1. Definitions
2. Fare changes
3. Responsibility for Schedules and Operations
4. Force Majeure
5. Oversales
6. Baggage
   Liability
   General Acceptance
   Checking Your Bag
   Carry-on Baggage
   Checked Baggage
   Fragile, Perishable and Hazardous Items
   Firearms
   Live Animals
   Further baggage Information
7. Check-in Requirements and Baggage Acceptance Cutoff Times
8. Acceptance of Passengers
9. Acceptance of Children
   Accompanied
   Unaccompanied
10. Refunds
    General Refunds
    Involuntary Refunds
    Lost Tickets
11. Ticket Validity
12. Ticket Validity
    Compliance with Terms and Conditions of Sale
13. Claims
14. Lowest Fare Availability/Guaranteed Fare
15. Customers with Disabilities
16. Aircraft Information
17. Customer Relations
18. Delays, Cancellations and Diversions
19. Essential Needs During Extraordinary Delays
20. Authority to Change Contract
21. Frequent Flyer Award Disclosure
22. Service with Domestic Code Share Partners

**DEFINITIONS**

As used in this contract, **ticket** means your passenger ticket and baggage check which incorporates these Conditions of Carriage.

**Baggage** means such articles, effects and other personal property as are necessary or appropriate for your wear, use, comfort or convenience in connection with your trip, whether checked in the cargo compartment or carried in the passenger compartment of the aircraft.

**American Ticket Office** means a ticket sales location of American Airlines, Inc./ American Eagle or the office of one of its appointed travel agents.

**FARE CHANGES**

The price of transportation is printed on each ticket. If, after a ticket has been issued and before any portion has been used, a decrease in the applicable fares or charges becomes effective, or a new fare between the points shown on the ticket is added, the full amount of the difference in fares less any change fees applicable to the original fare rule and date of purchase, will be refunded to the purchaser, upon request, provided there is no change in origin/destination/stopover points/flights/dates shown on the original ticket and, subsequent to the decrease in fares/charges or the addition of a new fare, all conditions of the lower fares/charges are met, including booking code and any advance reservations/ticketing requirements. When reduced fares are for sale for a limited period of time, American reserves the right to decline to issue refunds. For non-refundable fares, the passenger will receive the difference in the fares in the form of a non-refundable AA travel voucher.

If American increases the price for the transportation, an additional collection may be made for:

1.  Any segments where you change your flight to a different time, date or routing from that shown on your ticket, and
2.  Any segment shown as "open" on your ticket.

**RESPONSIBILITY FOR SCHEDULES AND OPERATIONS**

American will endeavor to carry you and your baggage with reasonable dispatch, but times shown in timetables or elsewhere are not guaranteed and form no part of this contract. American may, without notice, substitute alternate carriers or aircraft and, if necessary, may alter or omit stopping places shown on the ticket. Schedules are subject to change without notice. American is not responsible for or liable for failure to make connections, or to operate any flight according to schedule, or for a change to the schedule of any flight. Under no circumstances shall American be liable for any special, incidental or consequential damages arising from the foregoing.

Return to Top

**FORCE MAJEURE EVENTS**

AA may, in the event of a force majeure event, without notice, cancel, terminate, divert, postpone or delay any flight or the right of carriage or reservation of traffic accommodations without liability except to issue an involuntary refund. The involuntary refund will be made in the original form of payment in accordance with involuntary refund rules for any unused portion of the ticket. AA will also reserve the right to determine if any departure or landing should be made without any liability except the afore mentioned involuntary refund.

**Force Majeure Event Means**

1.  Any condition beyond AA's control including, but without limitation, meteorological conditions, acts of God, riots, civil commotion, embargoes, wars, hostilities, disturbances or unsettled international conditions - actual threatened or reported. Also, because of any delay, demand, circumstances or requirement due, directly or indirectly to such conditions, or
2.  Any strike, work stoppage, slowdown, lockout or any other labor related dispute involving or affecting AA's service, or
3.  Any government regulation, demand or requirement, or
4.  Any shortage of labor, fuel or facilities of AA or others, or
5.  Any fact not reasonably foreseen, anticipated or predicted by AA.

**OVERSALES**

If a flight is oversold (more passengers hold confirmed reservations than there are seats available), and you are denied boarding involuntarily at the airport, you will be entitled to a payment of "denied boarding compensation" from American unless

1.  American arranges for you to be transported on another flight scheduled to arrive at your destination or next 4-hour stopover no later than one hour after your originally scheduled arrival time, or
2.  You did not fully comply with American's ticketing and check-in requirements, as set forth in the check-in requirements section, or cannot be accepted for transportation under the rules set forth the acceptance of passengers section.
3.  You are denied boarding because the flight is canceled, or
4.  You are denied boarding because a smaller capacity aircraft was substituted for safety or operational reasons, or
5.  You are offered accommodations in a section of the aircraft other than specified on your ticket, at no additional charge. If you are seated in a section for which a lower fare is applicable, you will be given an appropriate refund.
6.  You are denied boarding on an American Eagle/Connection aircraft with a designed seating capacity of 30 through 60

seats because of weight/balance restrictions required by operational or safety reasons.

On American Airlines flights and American Eagle/Connection flights with more than 30 seats, if you are eligible for denied boarding compensation, you will be offered a payment equal to the sum of the face value of your flight coupon(s) to your point of destination or first stopover, subject to a maximum of $400. However, if American cannot arrange "alternate transportation" (as defined below) for you, the compensation will be doubled subject to a maximum of $800.

On American Eagle flights with 30 seats or less, if you are eligible for denied boarding compensation the total value of the coupon in question will be refunded (not to exceed $100.00) and you will be transported, free of charge, on the next available American Eagle flight to your destination or next point of stopover/connection. The total value of the coupon (not to exceed $100.00) will be refunded without regard to the availability of later service or your arrival time on that service at your destination or next point of stopover/ connection.

The "value" of a flight coupon is the one-way fare for the flight segment(s) shown on the coupon(s) (including any surcharge and air transportation tax, minus any applicable discount) to your destination or next scheduled 4-hour stopover. "Alternate transportation" is air transportation or other transportation used by you which, at the time the arrangement is made, is scheduled to arrive at your destination or next scheduled stopover no later than 2 hours (for domestic flights) or 4 hours (for international flights) after your originally scheduled arrival time.

If you voluntarily relinquish your confirmed reservation upon request by American, you may receive a travel voucher valid for travel on American. Likewise, if you are entitled to denied boarding compensation, you may elect to receive a travel voucher valid for travel on American. These travel vouchers may be used only for the purchase of air transportation on American, and must be used within one (1) year of their issuance.

Your acceptance of denied boarding compensation relieves American from any further liability caused by its failure to honor your confirmed reservation.

Additional information concerning our overbooking policies can be found on ticket jackets. Upon request, reservations representatives or airport agents will advise you if your flight is overbooked at the time your reservation is made or during the airport check-in process.

## BAGGAGE

**Liability**
American's liability for loss, damage or delayed delivery of checked or transferred baggage is limited to the actual value of the baggage or $3000.00, whichever is less, unless the passenger declares a higher value (not to exceed $5000.00 including the $3000.00 standard liability per passenger) and pays American a sum of $2.00 per $100.00 (or any portion thereof) of excess value.

The standard liability of $3000.00 is applicable for travel beginning February 28, 2007.

Customers with disabilities traveling with wheelchairs or other mobility devices are exempt from liability restrictions for loss, damage or delays to these items for both domestic and international travel.

American assumes no responsibility for loss, damage or delayed delivery of transferred baggage not acceptable for transportation by American as checked baggage, items damaged as a result of items contained in checked or transferred baggage, and items accepted by American pursuant to the execution of a release form. American does not accept in or as checked baggage any of the following items: antiques, artifacts, artwork, books and documents, china, computers and other electronic equipment, computer software, fragile items (including child/infant restraint devices such as strollers and car seats), eyeglasses, prescription sunglasses, non-prescription sunglasses and all other eyewear and eye/vision devices whether lenses are glass, plastic, or some other material, furs, heirlooms, items carried in the passenger compartment of the aircraft, liquids, medicines, money, orthotics, surgical supports, perishable items, photographic, video and optical equipment, precious metals, stones or jewelry, securities and negotiable papers, silverware, samples, unique or irreplaceable items or any other similar valuable items. American does not accept these items in or as checked baggage and assumes no responsibility or liability for such items, regardless of whether American knew or should have known of the presence of such items in checked or transferred baggage. If any such items are lost, damaged or delayed, you will not be entitled to any reimbursement under American's standard baggage liability, or under any declared excess valuation. Do not attempt to check these items. Carry them with you in the passenger cabin (subject to carryon baggage limitations).

American assumes no liability for articles carried in the passenger cabin.

American assumes no liability for minor damage such as scratches, scuffs, stains, dents, cuts and dirt resulting from normal wear and tear.

American assumes no liability for recreational/sports items not presented in a hard-sided case.

American assumes no liability for musical instruments not presented in a hard-sided case.

American is not responsible for damage to contents if the outside of the hard-sided case is not damaged.

American assumes no responsibility for damage to or loss of protruding baggage parts such as wheels, straps, pockets, pull handles, hanger hooks or other items attached to the baggage.

American assumes no liability for any indirect, consequential, incidental, punitive or special damages resulting from loss, damage or delayed delivery of checked or transferred baggage, including, without limitation, damages for lost revenue or profits, loss of use or business interruption.

**General Acceptance of Baggage**
Only baggage as defined in the definition section will be accepted for transportation. All baggage is subject to inspection. Checked baggage will be accepted for transportation only on flights on which you are traveling. American will not accept baggage whose size, weight, or character makes it unsuitable for transportation on the aircraft as determined by American.

Other than exceptions for certain special items, no article will be accepted as baggage if it weighs more than 100 pounds or has a total out side linear dimension (length plus width plus height) of more than 115 inches. Additional restrictions apply to some American Eagle flights. Further information is available at any American ticket office.

**Checking Your Bag**
Your name must appear on all baggage. Baggage will not be checked:

- To a city not on your routing
- Beyond your next stopover city
- Beyond your final destination city
- Beyond a connecting city if the connecting flight departs from an airport different from the arrival airport

For passengers checking bags, there are baggage acceptance cutoff times. "Baggage acceptance cutoff time" means that customers must present themselves and their baggage to an airline representative for check-in no later than the stated cutoff times for the departure airport.

For customers checking baggage, cutoff time for baggage check-in is 30 minutes before departure for all airports in the U.S., Puerto Rico and U.S. Virgin Islands with the following exceptions:

| Flights departing | Baggage Acceptance Cutoff Time |
|---|---|
| Anchorage, Alaska (ANC) | 40 minutes |
| Atlanta, Georgia (ATL) | 40 minutes |
| Chicago O'Hare, Illinois (ORD) | 40 minutes |
| Dallas/Fort Worth, Texas (DFW) | 40 minutes |
| Denver, Colorado (DEN) | 45 minutes |
| Las Vegas, Nevada (LAS) | 45 minutes |
| Los Angeles, California (LAX) | 45 minutes |
| Miami, Florida (MIA) | 45 minutes |
| Minneapolis/St. Paul, Minnesota (MSP) | 35 minutes |
| Newark, New Jersey (EWR) | 40 minutes |
| New York JFK, New York (JFK) | 45 minutes |
| Orlando, Florida (MCO) | 40 minutes |
| San Juan, Puerto Rico (SJU) | 40 minutes |
| St. Croix, U.S Virgin Islands (STX) | 45 minutes |
| St. Thomas, U.S Virgin Islands (STT) | 45 minutes |
| Washington Dulles, District of Columbia (IAD) | 40 minutes |

For flights originating outside the U.S., you must check in 60 minutes before departure, and be present at the departure gate and ready to board at least 30 minutes prior to scheduled departure time to retain your reservation and a seat.

Standard baggage acceptance cutoff for flights originating in all airports outside the U.S. is 60 minutes before departure.

For international departures from a U.S. city, standard baggage acceptance cutoff time is 60 minutes.

Checked baggage may be claimed only by the holder of the baggage claim check. Baggage will not be released unless all sums due American are paid. Baggage claim checks must be returned to American on request. American is not responsible to determine that the holder of the claim check is entitled to the baggage. If baggage claim checks are lost, proof of ownership may be required prior to release of the baggage.

Acceptance of baggage by the bearer of a claim check without filing a written complaint shall constitute evidence of delivery by American of your baggage, with all original contents, in good condition.

In the event your checked bags do not arrive on your flight, reasonable efforts will be made to ensure that the bag is returned to you within 24 hours for flights within the U.S. Our goal to return bags within 24 hours applies only when we are the carrier taking you to your final destination. Returning your bags may take longer on international flights due to flight duration, frequency of flights, or customs and immigration procedures at the destination airport.

Listed below are some circumstances that may inhibit our ability to return your bags within 24 hours:

1. No local name/address/phone numbers are provided
2. You are located at a remote location or an /unreachable/ address, such as a cruise ship or a camping site
3. You changed your delivery address, but did not notify us
4. We have limited flight schedules to your destination
5. Operational circumstances prevent American airlines or American Eagle from being able to locate or deliver your bags within this time frame.

**Carry-on Baggage**
The suitability of carry-on baggage will be determined by American. Each customer will be limited to one carry-on bag and one personal item. A personal item includes a purse, briefcase, laptop, or small book bag style backpack. If government regulations are more restrictive, such restrictions shall apply.

Other items that do not exceed 36 linear inches (length + width + height) will be allowed such as a small tote bag, shoulder bag or book bag. A carry-on bag must fit in an overhead compartment or under the seat and should not exceed 45 linear inches or weigh more than 40 pounds.

On American Eagle flights each customer is limited to a personal item in the cabin, but their carry-on item (not exceeding 45 linear inches) will be valet checked at the gate or planeside.

Carry-on items which appear too large or irregularly shaped to fit under a seat, in an overhead compartment, or in a closet or luggage rack will not be accepted for passenger cabin stowage.

Any mobility aid or assistive device that is approved for in-cabin transport on American, and is carried by a qualified disabled passenger, is not subject to the free baggage allowance, provided such aid or device fits in an approved stowage space.

Additionally, all baggage must be completely stowed before the airplane may depart the gate. At times, additional limits may be placed on carry-on baggage based on the main cabin stowage capacity of specific aircraft. These limits may be imposed after the boarding process has begun. As American aircraft vary in size and configuration, certain restrictions may apply regarding the size and amount of carry-on and checked baggage allowed. Further information is available at any American Airlines or American Eagle ticket counter or by calling American Airlines reservations.

**Checked Baggage**
Customers who purchase domestic economy class tickets on or after May 12, 2008, but before June 15, 2008, may check one bag for free and check a second bag for $25 each way. Customers who purchase domestic economy class tickets on or after June 15, 2008, will be charged $15 each way for the first checked bag and $25 each way for the second checked bag. The total outside dimensions of each piece of checked baggage may not exceed 62 inches and may weigh up to 50 pounds.

The following customers will not be charged the first and/or second Checked Baggage Fee provided the bag is within the size and weight allowance noted above:

● AAdvantage Executive Platinum®, AAdvantage Platinum® or AAdvantage Gold® members
● oneworld Alliance Emerald, Sapphire or Ruby members
● Customers flying on the same reservation as an AAdvantage Executive Platinum, AAdvantage Platinum or AAdvantage Gold member or oneworld Alliance Emerald, Sapphire or Ruby member regardless of frequent flier status or fare type (not applicable to group bookings)
● Customers who purchase Business or First Class tickets
● Customers who purchase full-fare tickets in Economy Class
● Customers flying on AA codeshare flights not operated by American Airlines, American Eagle or AmericanConnection®
● Customers traveling on government or military fares
● Military passengers on active duty
● AAdvantage AAnytime® Award tickets and MileSAAver First and Business Class Award tickets
● First and Business Class upgrades confirmed prior to check in
● An assistive device (required by a medically disabled passenger) will continue to be accepted without charge.

**The following charges are applied to additional oversized and/or overweight pieces of checked baggage for travel within the United States, the U.S. Virgin Islands and Puerto Rico:**

**Excess Baggage Fees**
● $100 per piece for the 3rd, 4th and 5th checked bags
● $200 per piece for the 6th checked bag and any additional pieces

**Overweight Baggage Fees**
● Checked baggage weighing over 50 lbs./23 kgs but not more than 70 lbs./32 kgs will be charged at the rate $50 per piece.
● Checked baggage weighing over 70 lbs / 32 kgs but not more than 100 lbs/45 kgs will be charged at the rate of $100 per piece.
● Baggage weighing more than 100 lbs/45 kgs will not be accepted as checked baggage.
● These charges are in addition to any charges assessed for additional or oversized baggage.

**Oversized Baggage Fees**
● Checked baggage which is larger than American Airlines stated size limits will be charged at the rate of $150 per piece.
● These charges are in addition to any charge assessed for additional or overweight baggage.
● Baggage measuring more than 115 in/292 cm (total outside dimensions; length + width + height) will not be accepted as checked baggage.

**Oversized and Overweight Baggage**
The charge for oversized baggage and the charge for overweight baggage will be added together.

**Fragile, Perishable and Hazardous Items**
Fragile and perishable items will be accepted only if the passenger agrees to release American from liability for damage due to spoilage or delay.

Hazardous materials will not be accepted as baggage except for limited amounts of dry ice subject to Americans rules.

**Firearms**
Firearms and ammunition will be accepted only as checked baggage, subject to American's rules.

**Live Animals**
Pets (cats and dogs only) will be accepted as baggage when confined in a container, subject to American's rules and charges. Live animals will not be accepted for interline transfer to other airline flights. Certain restrictions apply for some American Eagle flights. Further information is available at any American Ticket Office.

**Further Baggage Information**
Further information regarding American's rules for specific items may be obtained from any American Ticket Office. American's classification of an item shall be final.

Return to Top

**CHECK-IN REQUIREMENTS AND BAGGAGE ACCEPTANCE CUTOFF TIMES**
**RECOMMENDED CHECK-IN TIMES**
When travel is completely within the U.S. including Puerto Rico, and on flights to Hawaii and the U.S. Virgin Islands, recommended check-in time is at least 90 minutes prior to departure when checking baggage, and at least 60 minutes prior to departure if not checking baggage.

For flights departing Hawaii and the U.S. Virgin Islands, recommended check-in time is at least two hours prior to scheduled departure.

For international flights, we recommend you arrive at the airport at least two hours prior to departure to allow sufficient time to complete all necessary international requirements.

Recommended check-in times for cities that exceed two hours:

| Flights departing | Recommended Check-In Time |
|---|---|
| Aruba, Aruba (AUA) | 180 minutes |
| Bermuda, Bermuda (BDA) | 150 minutes |
| Delhi, India (DEL) | 210 minutes |
| Dublin, Ireland (DUB) | 180 minutes |
| Mexico (All cities) | 180 minutes |
| Nassau, Bahamas (NAS) | 180 minutes |
| Paris Charles De Gaulle, France (CDG) | 180 minutes |
| Port-au-Prince, Haiti (PAP) | 180 minutes |
| Port of Spain, Trinidad & Tobago (POS) | 180 minutes |
| San Pedro Sula, Honduras (SAP) | 180 minutes |
| Tegucigalpa, Honduras (TGU) | 180 minutes |

**CHECK-IN REQUIREMENTS AND BAGGAGE ACCEPTANCE CUTOFF TIMES**
Customers must comply with minimum check-in requirements to retain their seats on the flight on which they are confirmed. Pre-reserved seats are subject to cancellation unless you have checked in (obtained a boarding pass) at least 30 minutes before scheduled departure. American does not guarantee to provide any particular seat on the aircraft.

For passengers checking bags, there are also baggage acceptance cutoff times. "Baggage acceptance cutoff time" means that customers must present themselves and their baggage to an airline representative for check-in no later than the stated cutoff times for the departure airport.

**DOMESTIC TRAVEL**
In addition to checking in 30 minutes before departure, you must be present at the departure gate and ready to board at least 15 minutes prior to scheduled departure time to retain your reservation and a seat.

For customers checking baggage, cutoff time for baggage check-in is 30 minutes before departure for all airports in the U.S., Puerto Rico and U.S. Virgin Islands with the following exceptions:

| Flights departing | Baggage Acceptance Cutoff Time |
|---|---|
| Anchorage, Alaska (ANC) | 40 minutes |

| Atlanta, Georgia (ATL) | 40 minutes |
| Chicago O'Hare, Illinois (ORD) | 40 minutes |
| Dallas/Fort Worth, Texas (DFW) | 40 minutes |
| Denver, Colorado (DEN) | 45 minutes |
| Las Vegas, Nevada (LAS) | 45 minutes |
| Los Angeles, California (LAX) | 45 minutes |
| Miami, Florida (MIA) | 45 minutes |
| Minneapolis/St. Paul, Minnesota (MSP) | 35 minutes |
| Newark, New Jersey (EWR) | 40 minutes |
| New York JFK, New York (JFK) | 45 minutes |
| Orlando, Florida (MCO) | 40 minutes |
| San Juan, Puerto Rico (SJU) | 40 minutes |
| St. Croix, U.S Virgin Islands (STX) | 45 minutes |
| St. Thomas, U.S Virgin Islands (STT) | 45 minutes |
| Washington Dulles, District of Columbia (IAD) | 40 minutes |

**INTERNATIONAL TRAVEL**
For flights originating outside the U.S., you must check in 60 minutes before departure, and be present at the departure gate and ready to board at least 30 minutes prior to scheduled departure time to retain your reservation and a seat. Standard baggage acceptance cutoff for flights originating in all airports outside the U.S. is 60 minutes before departure.

For international departures from a U.S. city, standard baggage acceptance cutoff time is 60 minutes.

Return to Top

**ACCEPTANCE OF PASSENGERS**

American may refuse to transport you, or may remove you from your flight at any point, for one or several reasons, including but not limited to the following:

1. Compliance with government requisition of space.
2. Action necessary or advisable due to weather, or other conditions beyond American's control.
3. Refusal to permit a search of person or property for explosives or for deadly, controlled, or dangerous weapons, articles or substances.
4. Refusal to produce positive identification upon request.
5. Your physical or mental condition is such that in American's sole opinion, you are rendered or likely to be rendered incapable of comprehending or complying with safety instructions without the assistance of an attendant.
6. Your conduct is disorderly, abusive or violent, or you
   a. Appear to be intoxicated or under the influence of drugs,
   b. Attempt to interfere with any member of the flight crew,
   c. Have a communicable disease that has been determined by a federal public health authority to be transmissible to other persons in the normal course of flight,
   d. Refuse to obey instructions from any flight crew member,
   e. Have an offensive odor not caused by a disability or illness,
   f. Are clothed in a manner that would cause discomfort or offense to other passengers,
   g. are barefoot, or
   h. Engage in any action, voluntary or involuntary, that might jeopardize the safety of the aircraft or any of its occupants.
7. Additional information regarding American's passenger acceptance policy may be obtained from any American ticket office.

**ACCEPTANCE OF CHILDREN**

**Accompanied**
Children 2 through 14 years of age will be accepted for transportation when accompanied by a passenger at least 15 years of age. Infants under 2 years of age will be accepted when accompanied by a passenger at least 15 years of age. Infants under 2 days of age will not be accepted for transportation. For infants up to 7 days old, a medical statement may be required stating the infant is stable for travel.

**Unaccompanied**
Children under 5 years of age will not be accepted under any circumstances. Unaccompanied children 5, 6 or 7 years of age will be accepted on a nonstop or through flight only, and must be accompanied by a parent or responsible adult until the child is boarded on the flight and the aircraft has departed the gate*. The child must be met at the destination by another parent or responsible adult.

* Note:

Unaccompanied minors ages 5-7 are restricted on change-of-gauge flights.

Unaccompanied children 5, 6, or 7 years of age will not be accepted on certain American Eagle flights operated in equipment not requiring a flight attendant. Specific information may be obtained through reservations, or at any American ticket office.

Unaccompanied children 8 through 14 years of age will be accepted for transportation on nonstop, through or connecting flights. Reservations must be confirmed to the destination. The child must be accompanied by a parent or responsible adult until the child has boarded the flight and the aircraft has departed the gate. The child must be met at the destination by another parent or responsible adult. A service charge will be assessed for unaccompanied children on all flights.

American Airlines, American Eagle, and AmericanConnection do not accept unaccompanied children (UMNR) when their itinerary includes a connection to/from another airline, including codeshare and oneworld partners.

American will not accept reservations or provide transportation for unaccompanied children for any itinerary that includes the last online connecting flight.

During schedule irregularities, American may refuse to provide connection air transportation services at any origination city to an unaccompanied child holding reservations when there is a reasonable likelihood that the child will not make a flight connection, and therefore require overnight accommodations.

Return to Top

**REFUNDS**

**General Refunds**
If you decide not to use your ticket, and unless the ticket specifies otherwise, American will issue a refund as follows.

If the ticket is totally unused, the full amount paid will be refunded. However, an administrative service charge or refund penalty up to the full amount paid may be assessed if applicable.

If the ticket is partially used, the refund will be the difference between the fare paid and the fare for the transportation actually used as determined by the applicable rules.

In addition, if the ticket to be refunded is no longer valid for transportation, an administrative service charge will be assessed upon refund of the ticket. This service charge will be collected by deducting the applicable service charge from the amount which otherwise would be refunded. Tickets will be refunded only to the person named on the ticket as passenger, except that:

   a.  Tickets purchased with a credit card will be refunded only as a credit to the credit card account,
   b.  Tickets issued against a prepaid ticket advice will be refunded only to the purchaser, and
   c.  Tickets issued against a government transportation request will be refunded only to the government agency which issued the transportation request.

Once travel has commenced, refund requests for lower fares will not be honored.

American Airlines and American Eagle will strive to process eligible refunds in the time frames set out below, upon receipt of all required information. Some tickets are not refundable.

For all eligible paper and electronic tickets purchased within the U.S. with a credit card or cash, refunds will be provided within 7 business days of receipt of the required refund information. The credit card refund may take up to two billing cycles before appearing on a credit card statement, so you should contact your credit card company directly to verify receipt of the credit. Tickets purchased with a check will be refunded within 20 days of receipt of the required information.

Refunds for electronic tickets can be obtained by contacting our reservations department or through the refund section on our web site at AA.com. In addition, refunds on tickets, paper or electronic, less than $3,000 can be obtained at any of our U.S. airport ticket offices or City Ticket Offices. All other refund requests should be sent to the following address:

American Airlines, Inc.
Passenger Refund Services
Mail Drop 755
P.O. Box 582880
Tulsa, OK 74158-2880

Certain refund requests cannot be accommodated in the time frames discussed above. For example, refunds for lost tickets must be held for 90 days to ensure that they are not found and used. Tickets with adjustments (for example, a customer buys a first class ticket but actually travels in the main or coach cabin) require that we verify the itinerary and class of service flown, and this can take up to 45 days. Tickets that were purchased outside the U.S. require special handling because we must ensure that currency conversion rates are calculated correctly.

Refund for credit card purchases will be made only to the credit card account. Service charges are collected for some refunds e.g., lost tickets. American assumes no liability for any special, incidental, or consequential damages for instances in which we do not meet our goals for processing refunds.

**Helpful Suggestions**
To ensure a prompt refund, you must submit all required documentation and information including,

   • Valid ticket submitted to us before expiration date - tickets expire one year from the date of issue

- Original unused flight coupons for paper tickets
- Ticket number for electronic tickets
- Brief written explanation
- Your name, address, and telephone number(s), form of payment used to purchase the ticket

**Involuntary Refunds**
In the event the refund is required because of American's failure to operate on schedule or refusal to transport, the following refund will be made directly to you -

1. If the ticket is totally unused, the full amount paid (with no service charge or refund penalty), or
2. If the ticket is partially used, the applicable fare for the unused segment(s).

AA shall not be obligated to refund any portion(s) of a ticket which does not reflect a confirmed reservation on an AA flight involved in a schedule irregularity, unless such ticket was issued by AA.

Whether the refund is voluntary or involuntary, American reserves the right to refuse to make any refund in a currency other than the currency of purchase or in a country other than country of purchase.

**Lost Tickets**
Lost tickets will be refunded only if you pay a service charge as specified on the lost ticket application and agree to reimburse American for the amount of the ticket if it is used by someone else.

**TICKET VALIDITY**

A valid ticket must be presented for transportation. Tickets for itineraries with more than one flight segment must be used in accordance with the sequence of flights as they appear in the ticketed itinerary and receipt. If a paper ticket, the unused flight coupons must be presented attached to the passenger receipt coupon. American has the right, in its sole discretion, to confiscate any ticket that has been altered, mutilated, or improperly issued or which has been improperly presented or presented by someone other than the passenger named on the ticket.

Tickets are valid for use, reissue or refund only by the passenger named on the ticket. Unless otherwise indicated, tickets are not transferable. American is not liable to the owner of a ticket for honoring or refunding a ticket presented by another person.

Period of Validity

Unless your ticket indicates otherwise, tickets are valid for transportation for one year from date of initial use, or if unused, for one year from date of purchase.

**TICKET VALIDITY - COMPLIANCE WITH TERMS AND CONDITIONS OF SALE**

Tickets are valid for travel only when used in accordance with all terms and conditions of sale. Terms and conditions of sale include but are not limited to:

1. The passenger's itinerary, as stated on the ticket or in the passenger's reservation record,
2. Any requirement that the passenger stay over a specified date or length of time (for example, Saturday night or weekend) at the destination specified on the ticket.
3. Any special purpose or status (for example, age in the case of senior citizen or children's discounts, military status in the case of a military fare, official government business in the case of a government fare, or attendance at a qualified event in the case of a meeting or convention fare) that entitles the passenger to a special or reduced rate, or
4. Any other requirement associated with the passenger's fare level.

Unless a ticket is reissued by American or its authorized agent upon payment of applicable charges, or an authorized representative of American waives applicable restrictions in writing, a ticket is invalid:

a. If used for travel to a destination other than that specified on the ticket,
b. If the passenger fails to comply with applicable stay-over requirements,
c. If the passenger does not meet the purpose or status requirement associated with the fare category on the ticket, or
d. If American determines that the ticket has been purchased or used in a manner designed to circumvent applicable fare rules.

American specifically prohibits the practices commonly known as:

**Back to Back Ticketing:** The combination of two or more roundtrip excursion fares end to end for the purpose of circumventing minimum stay requirements.

**Throwaway Ticketing:** The usage of roundtrip excursion fare for one-way travel, and

**Hidden City/Point Beyond Ticketing:** Purchase of a fare from a point before the passenger's actual origin or to a point beyond the passenger's actual destination.

Where a ticket is invalidated as the result of the passenger's non-compliance with any term or condition of sale, American has the right in its sole discretion to:

a. Cancel any remaining portion of the passenger's itinerary,
b. Confiscate unused flight coupons,
c. Refuse to board the passenger or check the passenger's luggage, or
d. Assess the passenger for the reasonable remaining value of the ticket, which shall be no less than the difference between the fare actually paid and the lowest fare applicable to the passenger's actual itinerary

Return to Top

**CLAIMS**

**Loss/Delay**

In the case of delay or loss, an initial complaint must be presented to the carrier prior to leaving the arrival airport for which the baggage was checked or should have been checked. At the latest, such initial report must be made within four hours of the arrival of the flight on which the passenger traveled.

If compensation is sought for a delay or loss, a written claim, in the form provided by the carrier, must be received by the carrier no later than thirty days after the initial report was presented and recorded by the carrier.

**Damaged Baggage**

No action shall lie in the case of damage to baggage unless the person entitled to delivery files an initial report with the carrier prior to leaving the arrival airport, or at the latest, within 24 hours (or for international travel, seven days) from the date of receipt of the baggage.

Upon the carrier's agreement to accept a damage claim, the damage acknowledgement form provided by the carrier and the damaged property must be presented to the carrier for repair within thirty days from the date the damage acknowledgement form is furnished by the carrier to the passenger.

**Legal Action**

Legal action premised on or related to damage, delay or loss must be commenced within two years of the date of the incident.

**LOWEST FARE AVAILABILITY/GUARANTEED FARE**

Customers calling our reservations office or visiting our airline ticket offices or ticket counters will be offered the lowest available fare (exclusive of internet-only fares) when specific dates and times are provided. In the event the lowest available fare is not quoted, American's liability is limited to the difference between the fare quoted and the lowest available fare for which the customer was eligible at that time.

When you make a telephone reservation with American Airlines or American Eagle reservations, the fare quoted will be stored and guaranteed for 24 hours or until 12 midnight central time the following day, whichever gives you more time to make a decision. If you elect to make changes to the itinerary within this time-frame, the ticket price may change.

**CUSTOMERS WITH DISABILITIES**

American Airlines and American Eagle endeavor to provide passengers with disabilities dignified, professional, and courteous service at all times. We have a team of employees who regularly consult with disability advisory groups on the quality of our service.

A. **Reservations Special Assistance Coordinators**
American Airlines and American Eagle reservations offices maintain a staff of Special Assistance Coordinators (SAC) who work with customers who have identified themselves as having disabilities. The reservations representative who responds to the customer's initial call passes pertinent information to a SAC who calls the customer back. A toll-free number exists for customers with disabilities to follow-up on travel arrangements with the SAC office. Airport and in-flight personnel are notified of special service requests.

B. **Pre-Reserved Seats**
American Airlines and American Eagle block a limited number of seats on each aircraft to accommodate customers who identify themselves as having a qualified disability. Adjacent seats are provided, under certain circumstances, for customers with disabilities who must travel with a companion for assistance.

C. **Assistive Devices**
American Airlines and American Eagle accept motorized and non-motorized assistive devices for transport. When necessary, we will disassemble and reassemble wheelchairs or assistive devices for customers when they travel. American Airlines and American Eagle provide storage for one passenger's collapsible, manual wheelchair in the cabin of each jet aircraft. This service is available on a first-come, first served basis, and has priority over carry-on baggage belonging to other customers who board at the same city, provided the customer follows the preboarding procedure. In-cabin stowage space for assistive devices cannot be pre-reserved, but American Airlines and American Eagle accept carry-on wheelchairs, provided they collapse to fit in an overhead bin or under a seat.

Non-collapsible wheelchairs/scooters are accepted as checked baggage. These items can be checked at the main ticket counter or the departure gate. American Airlines and American Eagle offer a special wheelchair service that allows you to check your wheelchair at the departure gate and claim it at your arrival gate free of charge. Although you can arrange to claim your chair at the connecting city we recommend that the chair be checked through to the final destination. The additional time required to claim and re-check your chair at the connecting city may compromise your ability to make

your connection. American Airlines and American Eagle have wheelchairs and our representatives provide wheelchair service at connecting airports. Please let us know you will need this assistance when making your reservation. Assistive devices approved for cabin transport do not count towards the combined number of checked and carry-on baggage a passenger is allowed free of charge, nor do they count towards the limit on carry-on items you may bring on board.

D. **Boarding Assistance**
If you have special needs, upon request, pre-boarding assistance will be provided to you, allowing you the opportunity to be seated prior to general boarding. A special aisle chair is available to assist you if you are unable to walk, and all of our jet aircraft are equipped with specially designed seats that feature moveable aisle armrests to help make seating easier.

E. **Therapeutic Oxygen**
American Airlines provides onboard therapeutic oxygen, subject to availability. This service is not available on American Eagle flights. The reservations special assistance coordinators arrange for this service upon 48 hours advance notice. A doctors prescription is required advising of the liters per minute flow rate. A fee is charged for this service.

F. **Complaint Resolution Officials for Customers with Special Needs**
We have employees at airports who are trained as local complaint resolution officials (LCRO) and are available during operating hours. A corporate complaint resolution official is available to assist LCROs 24 hours per day, seven days per week.

## AIRCRAFT INFORMATION

American Airlines and American Eagle reservations representatives will advise you when it will be necessary for you to move from one aircraft to another during your travel, including when the flight number remains the same.

American Airlines and American Eagle reservations representatives are able to provide you with a wide variety of information related to the American Airlines and American Eagle fleets. Aircraft configuration, seat size, and seat pitch are just a few examples of information that can be obtained from our reservations representatives. This information is also available at the AA.com website.

## CUSTOMER RELATIONS

Our customer relations department is dedicated to addressing unresolved customer comments and concerns. The customer relations department will respond to our customers written complaints within 60 days.

## DELAYS, CANCELLATIONS AND DIVERSIONS

American Airlines and American Eagle will provide customers at the airport and onboard an affected aircraft with timely and frequent updates regarding known delays, cancellations and diversions and will strive to provide the best available information concerning the duration of delays and to the extent available, the flight's anticipated departure time. We are not responsible for any special, incidental or consequential damages if we do not meet this commitment.

When cancellations and major delays are experienced, you will be rerouted on our next flight with available seats. If the delay or cancellation was caused by events within our control and we do not get you to your final destination on the expected arrival day, we will provide reasonable overnight accommodations, subject to availability.

In extreme circumstances, it is possible that a flight will cancel while on the ground in the city to which it was diverted. When this happens you will be rerouted on the next American Airlines or American Eagle flight with available seats, or in some circumstances on another airline or some other alternative means of transportation. If we are unable to reroute you, reasonable overnight accommodations will be provided by American Airlines or American Eagle, subject to availability.

American Airlines and American Eagle will provide amenities for delayed passengers, necessary to maintain the safety and/or welfare of certain passengers such as customers with disabilities, unaccompanied children, the elderly or others to whom such amenities will be furnished consistent with special needs and/or circumstances.

## ESSENTIAL NEEDS DURING EXTRAORDINARY DELAYS

In the case of extraordinary events that result in very lengthy onboard delays, American Airlines and American Eagle will make every reasonable effort to ensure that essential needs of food (snack bar such as Nutri-Grain®), water, restroom facilities, and basic medical assistance are met. We are not responsible for any special, incidental or consequential damages if we do not meet this commitment.

## AUTHORITY TO CHANGE CONTRACT

No agent, employee or representative of American has authority to alter, modify or waive any provision of the Conditions of Carriage unless authorized in writing by a corporate officer of American.

## FREQUENT FLYER AWARD DISCLOSURE

Beginning in 2000, an annual report of award redemption will be published, both at the AA.com website and in the AAdvantage Newsletter.

## SERVICE WITH DOMESTIC CODESHARE PARTNERS

American Airlines and American Eagle will make their Customer Service Plan readily available to all of our domestic codeshare partners and, to the extent possible, make every reasonable effort to ensure our partners offer comparable levels of service.

Return to Top



DealFinder™ | RSS | AA.com en Español

Airline Tickets | AA Careers | Copyright | Legal | PRIVACY POLICY | Customer Service Plan | Browser Compatibility | Site Map

   

**AmericanAirlines®**
AA.com

## Planning Ahead

Booking Your Reservation | Advance Notice Needed | Special Assistance Coordinators | Prer.
Therapeutic Oxygen | Portable Oxygen Concentrators | Special Meals | Peanut Allergy | I

| Reservations |
| Travel Information |
| Net SAAver & Special Offers℠ |
| AAdvantage® |
| Products & Gifts |
| Business Programs & Agency Reference |
| About Us |

Featuring:

**Search By:**
**Price _and_ Schedule**









**Booking Your Reservation**
**On AA.com**
On AA.com, you can record your request for assistance from among the following selections:

Wheelchair Assistance (one of three options):

- Passenger can walk but requires wheelchair for distance to/from gate (see agent for wheelchair)
- Passenger can walk but needs assistance up/down stairs. A Special Assistance Coordinator will cont to make arrangements.
- Passenger cannot walk and needs assistance to seat on plane. A Special Assistance Coordinator wil passenger to make arrangements.

Therapeutic Oxygen

Passenger needs therapeutic oxygen provided inflight. A 48-hour notice is required, and a Special As Coordinator will confirm the availability of this request. A $100 fee is required per flight segment.

**A 72-hour advance notice is required for cancellations of therapeutic oxygen to ensure reusability of**
**The fee(s) paid may be applied toward future travel only if this service is canceled at least 72 hours in**

Visually Impaired

Passenger is visually impaired and needs guidance assistance.

Hearing Impaired

Passenger is hearing impaired and needs assistance.

**On Other Travel Websites**
If your reservation was booked on a website other than AA.com, you may make arrangements for special ass
AA Reservations directly at 1-800-433-7300 or TDD 1-800-543-1586.

Return to Top

**Advance Notice Needed**
We recommend that all of our customers make their reservations as far in advance as possible. While we do
disclosure of the nature or extent of your disability, the more information we have concerning any special ass
require, the more prepared we are to meet your needs during your trip.

We require at least 48 hours advance notice and that you arrange for the services below when making your r

- Therapeutic Oxygen
- Portable Oxygen Concentrator usage (see below for details)
- Travel with a group of ten (10) or more people with disabilities

**Note: A 72-hour advance notice will be required for cancellations of therapeutic oxygen to ensure reu**
**oxygen unit.**

Please let us know if you:

- Require a wheelchair
- Need assistance getting into and out of the aircraft seat
- Require adjacent seating for yourself and your personal care attendant
- Are traveling with a service animal
- Travel with a battery-powered respirator or ventilator
- Have any other special requirement
- Will need disassembly and battery packaging for your mobility assistive device

Return to Top

### Special Assistance Coordinators

Within our Reservations Department, an exclusive team called Special Assistance Coordinators operates to h travel. Specially trained in American Airlines and American Eagle policies and procedures, they document yo information concerning your service requests to help prepare our airport staff. In certain circumstances, they telephone before you travel. For this reason, it is helpful to have a valid, complete contact phone number ava reservation.

Although not required to do so, our customers with disabilities advise us that pre-arranging for special assista proceed more smoothly. Assistance from a Special Assistance Coordinator is arranged for at the time of bool Reservation Representative or with your Travel Agent upon identification of your support service request.

Return to Top

### Prereserved Seating

For customers with a disability who are traveling with another individual who is assisting them inflight as an a be arranged side by side. For those who use an aisle chair to access their seat and cannot readily transfer o there are many seats with moveable aisle armrests. Also, if you have a fixed or immobilized leg, please advis assign you a bulkhead seat if you desire one. If you are traveling with a service animal and desire to be assig seat, please advise us when you make your reservation.

Customers without a service animal or a fixed or immobilized leg may also prereserve bulkhead seating. Prio our customers with disabilities for available bulkhead seating on the day of departure. We recommend that y seating preference when you make your reservation.

**Please contact Reservations at 1-800-433-7300 to request the bulkhead seat.**

Return to Top

### Therapeutic Oxygen
**Advance Notice Required**
American Airlines makes supplemental oxygen available to customers during flight, provided reservations an the oxygen are made at least 48 hours in advance. This notice is necessary so that we may confirm availabili oxygen cylinder(s) at your point of boarding prior to your arrival. We also recommend confirming your reserva arrangements.

**Medical Certificate**
If you require oxygen, your physician must approve your travel and you must provide us a copy of the medica because therapeutic supplemental oxygen is a medical product, a signed statement from your physician, adv flow rate is required. You must keep this medical statement with you at all times.

Flow rates from 0.5 to 6 liters per minute are available. Please call any American Airlines reservations numbe you will need to travel with oxygen. Someone from our Special Assistance Coordinator desk will call you and arrangements.

**Air Carrier Owned Oxygen Supply (Inflight Only)**
The Federal Aviation Administration (FAA) requires that oxygen on airplanes be dispensed from approved co through the airline only, so you may not use your own. If you require oxygen at the airport before departure, c connection or at your destination, you will need to make separate arrangements. American Airlines is authori: oxygen during flight only.

There is a charge for this service and therapeutic oxygen is not available on American Eagle.

**Portable Oxygen Concentrators**
Customers needing medical oxygen can travel on American Airlines, American Eagle and AmericanConnecti portable oxygen concentrator (POC) during all phases of flight, provided the conditions listed below (under "T and Restrictions") are met.

**Approved Portable Oxygen Concentrators (POCs)**

Only the following POCs are allowed for use onboard our aircraft:

- Inogen One
- AirSep Lifestyle displaying an RTCA sticker
- AirSep FreeStyle
- SeQual Technologies Eclipse
- Respironics Inc. EverGo

Note: FAA Regulations forbid the carriage of other personal oxygen units including units which contain compr oxygen. Compressed and liquid oxygen are classified Hazardous Materials.

**Travel Requirements and Restrictions**
Once travel plans are confirmed, please contact reservations at least 48 hours in advance to let us know you the approved portable oxygen concentrators.

However, more advanced notice may be needed to meet all necessary requirements. We will verify that you I battery supply for your trip based on a calculation of your flight time including an added reserve and your oxy is listed on your medical certificate.

To obtain the medical certificate, see the Physician's Statement for Air Travel† (PDF file size: 13K) for comple print a statement for completion by your physician.

The Physician's Statement must state...

- Customer must be capable of hearing the portable oxygen concentrator alarms, seeing the alarm ligh able to take the appropriate action in response to these warnings, or travel with a companion capable

- That the user of the device has the physical and cognitive ability to see, hear, understand, and take a response to the device's aural and visual cautions and warnings.

- That oxygen use is medically necessary for all or a portion of the duration of the trip and must be spe portion if required oxygen use is not continuous.

- The required oxygen flow rate in liters per minute (LPM), corresponding to the pressure in the cabin o normal operating conditions.

Customer must provide their Physician's Statement for Air Travel† (PDF file size: 13K) to airline personnel up

Customer must inform airline personnel upon check-in that he or she intends to use a portable oxygen conce aircraft.

Customer must ensure that their POC is free of oil, grease or other petroleum products and is in good conditi damage or other signs of excessive wear or abuse.

Customer is responsible for traveling with a sufficient supply of batteries to last the entire journey, per their o including the duration of the flight, all ground time (before and after flight and during connections) and for une (25% extra battery supply plus at least one extra hour of battery supply). All batteries must be transported in o checked) baggage and must be packed in a manner that protects them from damage or short circuits. Your p concentrator, as well as the baggage containing the batteries, is exempt from the normal carry-on limitation o personal item.

Once travel plans are finalized, please contact reservations to advise us you will be using a POC during flight also assist you with determining your total anticipated travel time. Based on the users total travel time, a rese unanticipated delays, and the devices battery run time, a minimum numbers of batteries required will be deter intending to use their POC during flight that arrive at the airport with an insufficient number of batteries may b

If connecting to another airline or codeshare flight, customers must contact the operating carrier or other airlir traveling with portable oxygen concentrators.

**During Flight**

- Your POC must fit underneath the seat in front of you
- POC users may not sit in an emergency exit seat or bulkhead seat
- POC users may not sit in any seat that blocks another passenger's access to the aisle
- Customers may use their POC while moving about the cabin as long as the "Fasten Seat Belt" sign is

**Aircraft Power Ports**

- Customers using a POC onboard are required to bring a supply of batteries adequate for powering th
  time it is in use
- Some American Airlines aircraft are equipped with DC power ports, however, due to different aircraft
  configurations, and seating arrangements, the availability of a power port and continuous power flow
  cannot be guaranteed
- In the event a power port is available at your seat, it may only be used during flight and may not be u
  takeoff, and landing
- Use of a power port requires a DC power accessory obtained from your POC manufacturer

†Adobe Acrobat Reader required to view.

Return to Top

**Special Meals**

American offers special meals to meet specific dietary needs at your request on select flights. Since meals ar
flights, check with your travel agent or the airline to be sure that a meal is offered on your flight. Many frequer
snacks or sandwiches on board with them. This is also a good idea in the event that your flight encounters a '
delay. For more information, visit our Special Meals page.

Return to Top

**Peanut Allergy**

American recognizes that some passengers are allergic to peanuts. Although we do not serve peanuts, we do
products and there may be trace elements of unspecified peanut ingredients, including peanut oils, in meal ar
make no provisions to be peanut-free. Additionally, other customers may bring peanuts on board. Therefore,
guarantee customers will not be exposed to peanuts during flight and strongly encourage customers to take a
medical precautions to prepare for the possibility of exposure.

Return to Top

**Medications**

All customers are entitled to bring one carry-on item with them into the cabin. We recommend that you includ
you require in your carry-on luggage. You should NEVER put your medications in checked luggage. Our aircr
refrigerators onboard. Also, if you use needles to inject medication, checkpoint security policy is that you mus
possession medication requiring the use of a needle or syringe that has a professionally printed label identify
or a manufacturer's name or pharmaceutical label.

Return to Top

Back to Accessibility and Assistance for Customers With Disabilities Main Page

 DealFinder™ | RSS | AA.com en Español

Airline Tickets | AA Careers | Copyright | Legal | PRIVACY POLICY | Customer Service Plan | Browser Comp

  American *Eagle*