UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
RYAHN KHAN, an infant by his mother and natural
Guardian DR. TEHMINA HAQUE, and DR. TEHMINA
HAQUE individually,                                   Dckt. No. 08 CV 5246 (NRB)

                      Plaintiffs,

        -against-

AMERICAN AIRLINES, INC.

                      Defendant.

-----------------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO MOTION TO DISMISS**

LAW OFFICES OF KENNETH M. MOLLINS, P.C
Attorneys for Plaintiffs
By: _____
        Kenneth M. Mollins, Esq. (KM8465)
425 Broadhollow Road, Suite 205
Melville, New York, 11747
(631) 608-4100

[1]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------x
RYAHN KHAN, an infant by his mother and natural
Guardian DR. TEHMINA HAQUE, and DR. TEHMINA
HAQUE individually,                                            Dckt. No. 08 CV 5246 (NRB)

                Plaintiffs,

     -against-

AMERICAN AIRLINES, INC.

                Defendant.

-----------------------------------------------------------------------x

## PRELIMINARY STATEMENT

Plaintiffs commenced this action in New York State Supreme Court alleging three causes of action against Defendant American Airlines, Inc. ("AA"): (1) Intentional infliction of emotional distress; (2) Breach of AA's own published policy concerning the service of peanuts, and (3) Violation of Plaintiff Ryahn Khan's Civil Rights under 42 USC section 1983.

AA subsequently removed this case to this Court on the grounds that there is diversity jurisdiction and the claim allegedly raises a federal question under the Air Carrier Access Act of 1986. AA now brings the instant pre-answer motion seeking dismissal of this action because the complaint herein allegedly fails to plead a recognized legal theory against AA upon which relief may be granted. While AA focuses its attention on the issue of its service of nuts and its policy regarding the same, that is not the thrust of Plaintiffs' complaint herein. The thrust of the complaint herein is the

manner in which Plaintiffs were treated by AA's flight crew in their dealing with infant Plaintiff Ryahn's disability. It is the manner in which AA's flight crew treated Plaintiffs that takes this case out of preemption inasmuch as the manners in which AA's flight crew handled the situation during the flight in question was not reasonable or necessary in providing any service by AA.

Based upon all of the reasons detailed below,  it is respectfully submitted that AA's motion to dismiss must be denied in its entirety inasmuch as the complaint herein unequivocally pleads a cause of action against AA that this very Court has already recognized as legally assertable.

### <u>STANDARD OF REVIEW</u> <u>STATEMENT OF FACTS</u>

The standard of review on a motion to dismiss was recently the subject of several Supreme Court cases. The Supreme Court, in <u>*Bell Atlantic Corp. v. Twombly,*</u> <u>--- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)</u>, rejected a standard of review  which arguably necessitated the pleading of a specific set of facts and replaced the "no set of facts" language with the requirement that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." <u>*Id.* at 1974.</u> The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." <u>*Erickson v. Pardus,* ---</u> <u>U.S. ----, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)</u>. Factual allegations need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>*Bell Atlantic,*</u> <u>127 S.Ct. at 1959</u>.

The Second Circuit has interpreted this new standard of review as "not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal,* 490 F.3d at 157-158 (emphasis in original) Accordingly, the standard of review that should be applied to AA's motion to dismiss pursuant to Rule 12(b)(6) is the more flexible "plausibility standard," i.e. whether the complaint set forth allegations "plausibly suggesting" liability. *Williams v. Berkshire Financial Group. Inc.,* 491 F.Supp.2d 320, 324 (E.D.N.Y.2007).

Further, it is well established that on this motion to dismiss the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See, e.g. Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir.2007).

With these governing standards of review established, this Court must accept all of the factual allegations of the Complaint as true and draw all reasonable inferences in favor of Plaintiffs. Thus, for the purposes of this motion, the facts relevant to this motion are as follows:

In or about February 2008, Plaintiff Dr. Haque purchased five airline tickets from Defendant for herself and her family, including Plaintiff  Ryahn Khan her four year old son, to travel for a family vacation from New York's John F. Kennedy Airport to California's LAX airport. The flight was for April 18, 2008 – flight number 133. Plaintiff Dr. Haque purchased the airline tickets from Defendant knowing that Defendant had a

[4]

policy of not serving packaged peanuts aboard its flights. This policy was of critical importance to Plaintiff since Plaintiff's four year old son has a severe life threatening anaphylactic allergy to tree nuts, including peanuts.

In or about February 2008, Plaintiff Dr. Haque placed a telephone call into Defendant's corporate office to advise Defendant of her family's April 18, 2008 flight and her son's life threatening tree nut and peanut allergy so as to insure that the flight would be peanut free and therefore safe for her son's travel. Dr. Haque called once again one week before their scheduled flight to confirm the above. The agent with whom Plaintiff Dr. Haque spoke in February 2008 advised Plaintiff that she was making a record of Plaintiff's son's allergy for the April 18, 2008 flight 133 crew.

On April 18, 2008, Plaintiff Dr. Haque arrived with her family, including her son Ryahn,  at JFK Airport to board flight 133 to LAX. Plaintiff approached the boarding gate and again advised Defendant's agent of her son's life threatening tree nut and peanut allergy. The boarding gate agent assured Plaintiff Dr. Haque that no nuts, including peanuts, would be served on the flight. Having been reassured by Defendant's agent that no nuts would be served during the flight, Plaintiff and her family, including her four year old son, boarded flight 133 to LAX. However, still concerned for her son's safety, and in an excess of caution, Plaintiff Dr. Haque advised the first flight attendant she encountered upon boarding flight 133 of her son's life threatening tree nut and peanut allergy. The flight attendant appeared concerned and inquired where Plaintiff and her family would be sitting on the plane.

Once seated and settled, the flight attendant with whom Plaintiff Dr. Haque had spoken upon boarding the plane approached Plaintiff, knelt at Plaintiff's seat and inquired as to the severity of Plaintiff's son's nut allergy. Plaintiff Dr. Haque advised the flight attendant that her son's allergy was very serious and life threatening inasmuch his reaction to nuts was anaphylactic. Moreover, Plaintiff advised the flight attendant that there was no way of telling how much of an exposure to nuts was needed before a reaction was triggered. Plaintiff Dr. Haque advised the flight attendant of her great concern in being in an enclosed aircraft, with recirculated air, some thirty thousand feet in the air with no immediate access to emergent medical care. The flight attendant seemed to share Plaintiff's concern; advised Plaintiff Dr. Haque that she had a relative with a child who also had a food allergy and so understood the severity of the situation. The flight attendant then advised Plaintiff that she would advise the Purser of Plaintiff's situation.

Sometime after the flight attendant left to advise the Purser of Plaintiff's son's allergy, the Purser approached Plaintiff Dr. Haque and advised Plaintiff that no nuts would be served in the main cabin, but that he absolutely had to serve nuts in First Class and inquired if that would be okay. The Purser made it clear that Plaintiff really had no choice as First Class passengers allegedly got very upset if they didn't get served nuts aboard the flight. Given the fact that Plaintiff was really given no choice, Plaintiff Dr. Haque advised the Purser that she did not really know how to respond to him, especially since other Defendant representatives had stated that no nuts would be served during the flight.

[6]

Shortly thereafter, the gate attendant who had previously advised Plaintiff Dr. Haque that no nuts would be served during the flight boarded the plane with two additional flight attendants one of whom was named "Marci". Marci came charging down the plane aisle shouting in a loud and abusive voice "Alright, which one of you is the allergy victim?" This loud and conspicuous demonstrative display occurred despite the fact that 14 CFR 382 section 382.45 dictates "individual safety briefings for qualified individuals with a disability shall be conducted as inconspicuously and discreetly as possible."

Plaintiff's four year old son Ryahn became agitated and stunned upon hearing Marci's loud and aggressive inquiry. Plaintiff Dr. Haque then directed Marci's focus away from Plaintiff's son and fielded Marci's inquiry. Marci advised Plaintiff Dr. Haque in a loud and aggressive tone that it did not matter what anyone else had told Plaintiff but that she would be serving nuts not only in First Class but in the main cabin as well despite the allergy complained of and despite all prior assurances. Stunned, Plaintiff Dr. Haque inquired whether or not any announcement would be made to the crew and passengers. Plaintiff made this inquiry as she had a previous experience with Jet Blue Airlines where two announcements were made to the crew and passengers that a passenger had a severe nut allergy; advised all that no nuts would be served during the flight and requested that all passengers please refrain from opening up any products containing nuts during the flight. In fact, Jet Blue eliminated any snack containing nuts from their selection in accordance with the law in protecting their disabled passenger.

Marci responded to the Plaintiff sarcastically and in a belittling tone" exactly what do you want us to say - don't buy the nuts?"  Marci further advised Plaintiff Dr. Haque that "we cannot discriminate against all these people for just one person."

During the same time that Marci was making the comments noted above, another flight attendant was reading to Plaintiff Dr. Haque from a piece of paper which seemingly was some sought of disclaimer from Defendant concerning the service of nut products during the flight. Also at the same time that Marci was making the comments noted above a second flight attendant was allegedly reading some sort of disclaimer, the gate attendant who had boarded the plane was trying to advise Marci that he was the one who assured Plaintiff Dr. Haque that no nuts would be served during the flight. Marci however ignored the gate attendant's comments.

After reading the alleged disclaimer, that flight attendant sarcastically stated "I don't understand what the difference is if your child were on the playground and other children there had been eating peanut butter."  Interrupting Marci's tirade, Plaintiff Dr. Haque responded to the flight attendant "Thirty-five thousand feet and recirculated air," to which the flight attendant responded "Good point."

During this tirade and commotion, the flight attendant kept trying to reread the disclaimer to Plaintiff, despite Plaintiff Dr. Haque asking them to stop, and inquiring of Plaintiff as to whether she understood the disclaimer. This was done despite the fact that 14 CFR 382 section 382.45 states: "carrier personnel shall not require any qualified individual with a disability to demonstrate that he or she has listened, read or understood the information presented." Plaintiff Dr. Haque, visibly upset at this point and

in tears, responded that the only thing she understood was that the attendants did not care about the well being of her son.

Plaintiff's son Ryahn who heard everything that was going on and saw Plaintiff start to cry, became upset and concerned repeatedly asking his mother if she was alright. Dr. Haque's daughter also became emotional as a result of the crew's loud and insulting demeanor towards her brother and her mom. This further aggravated the emotional distress of the Dr. Haque. Plaintiff, not only concerned about her son's safety imprisoned upon a plane wherein the flight crew and attendants not only recklessly and carelessly disregarded the health and well being of her son, but intentionally and recklessly endangered his life, was also concerned about her son's emotional well being as he grew more agitated about what was going on between Plaintiff and the various flight personnel.

Indeed, other passengers on the plane began to show signs of disgust in response to the scene that was being made by Defendant's flight attendants. One passenger in row 28 stood up, confronted the flight attendants and shouted "Doesn't this just make intuitive sense to all of you? What do you want her to do, buy all the nuts on the plane?" The flight attendants completely ignored this passenger who finally sat down in disgust shaking his head.

Contrary to Defendant's policy of serving no nuts; contrary to the representations of Defendant's agents that were made to Plaintiff, and despite Plaintiff advising Defendant's agents of her son's life threatening allergy to tree nuts, Defendant served

nuts during the flight even though there were at least 5 other snack options for sale at that time.

For the entire flight from New York's JFK airport to California LAX airport, Plaintiff remained fearful, tense and anxious as she watched over her son's every breath and body twitch concerned that at any moment her son could have an anaphylactic reaction while imprisoned thirty-five thousand feet in the air which could result in his death in minutes. Adding to Plaintiff's acute anxiety was the fact that at the tender age of four years, Plaintiff's son was not mature enough to communicate to Plaintiff the initial warning signs that could signal the beginning of an allergic reaction.

Plaintiff remained in a constant and heightened state of acute anxiety about her son's well being until the plane landed in California's LAX airport and Plaintiff and her family began to exit the plane. While exiting the plane, the Purser advised Plaintiff to write into AA.com. Plaintiff's son responded to the comment that he would never fly American Airlines again to which one of the flight attendants replied "I don't blame you."

It is with this statement of facts that the Court must evaluate the merit of AA's motion to dismiss. Based upon all of the legal arguments set forth in detail below, it is clear that AA's motion must be denied in its entirety.

## ARGUMENT

### PLAINTIFFS' FIRST CAUSE OF ACTION ALLEGING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS NOT PRE-EMPTED

Tort claim arising under New York law, particularly those involving personal injury, are not pre-empted by federal law. *Harrell v. Champlain Enterprises*, 200 AD2d

290, 613 NYS2d 1002 (3rd Dept 1994) (Wherein the decedent's – who was killed in an airline crash – estate's state action for wrongful death was held not to be pre-empted by federal law the court noting that the saving clause in the Federal Aviation Act provided that the traditional role of state law is to be maintained in adjudicating bodily injury claims); _Heller v. Delta Airlines_, WL 330093 (SDNY 1993) (Wherein the plaintiff's claim of airline negligence in causing a bag to fall from an overhead compartment causing injury to plaintiff was not pre-empted by the Airline Deregulation Act of 1978); see also, _Sedigh v. Delta Airlines_, 850 F. Supp 197 (EDNY 1994); _Pittman by Pittman v. Grayson_, 869 F. Supp. 1065 (SDNY 1994).

AA relies heavily upon the recent New Jersey District Court case of _Panitch v. Continental Airlines_, 2008 WL 906240 (DNJ 2008) in support of its motion to dismiss. As is detailed below, such reliance is misplaced as the _Panitch_ case is clearly distinguishable from the case at bar.

The _Panitch_ case involved a situation wherein the plaintiff infant suffered from a severe peanut allergy. The plaintiff requested that, despite Continental Airlines policy to the contrary, that no nuts be served during the flight and that a buffer zone be created around the infant plaintiff's seat. Continental Airlines refused the plaintiffs' request noting that such was not in accord with the airline's policy. Plaintiffs then filed suit alleging three separate claims: (1) Handicap discrimination pursuant to New Jersey Law Against Discrimination (NJLAD); Aiding and abetting pursuant to NJLAD, and (3) intentional infliction of emotional distress.

The _Panitch_ decision arose out of a motion by Continental Airlines for summary judgment and a cross-motion for summary judgment by the plaintiffs. This procedural distinction from the case at bar wherein at issue is a motion to dismiss is significant in terms of the burden of proof at issue on the motion. The main argument of Continental in support of its motion for summary judgment was that plaintiffs' claims were preempted by the Airline Deregulation Act of 1978 (ADA). Inasmuch as the first two of plaintiffs' three claims related to a specific New Jersey Law – i.e. NJLAD – which is not part of this action, the arguments relating to the same have no bearing or relevance to this action. The third claim raised by plaintiffs in the _Panitch_ case was for intentional infliction of severe emotional distress Thus, the issue in _Panitch_ was whether the plaintiffs' claim for intentional infliction of severe emotional distress arising out of Continental's refusal to remove nuts from its snack offering and create a buffer zone around plaintiff was preempted by the ADA. The New Jersey District Court held that such a claim was preempted. However, for the reasons detailed below, that holding is inapplicable here.

The _Panitch_ Court acknowledged that although the Supreme Court applies a broad interpretation to the scope of ADA preemption provision, it has yet to enunciate a definition for "service". _Nw. Airlines, Inc. v. Duncan,_ 531 U.S. 1058, 1058, 121 S.Ct. 650, 148 L.Ed.2d 571 (2000) (O'Connor, J., dissenting to denial of _cert._). "The Courts of Appeals, however, have taken [two] directly conflicting positions on this question of statutory interpretation." _Id._ (citing cases illustrating circuit split).

The first view was advanced by the Ninth Circuit, and construes "service" narrowly. *Id.* (citing *Duncan v. Nw. Airlines, Inc.,* 208 F.3d 1112, 1114-15 (9th Cir.2000) (quoting *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1261 (9th Cir.1998) (the term service encompasses " 'the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail,' " but not the " 'provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities.' "))). The second view, on the other hand, defines "service" much more broadly, and includes " 'contractual features of air transportation,' including 'ticketing, boarding procedures, provision of food and drink, and baggage handling.' " *Id.* (quoting *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995)).

"A majority of the circuits to have construed 'service' have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink-matters incidental to and distinct from the actual transportation of passengers." *Air Transport Ass'n of Am.,* 2008 U.S.App. LEXIS 6130, at *11, 2008 WL 763163 (citing cases decided by the First, Fourth, Fifth, Seventh, and Eleventh Circuits adopting the broader definition of "service").

Rather than use a blind formula for preemption under the ADA, the Courts have instead held that we must examine the underlying facts of each case to determine whether the particular claims at issue 'relate to' airline rates, routes, or services." *Travel All Over The World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1433 (7th Cir.1996). In examining the facts of each case, this Court's rationale and holding in *Peterson v.*

*Continental Airlines, Inc*, 970 F. Supp 246 (SDNY 1997) is more applicable to the case at bar.

In *Peterson*, the procedural posture of the case was the same as the case at bar in that at issue was a motion to dismiss. Continental moved to dismiss the complaint on the ground that the Court lacked subject matter jurisdiction in that the ADA preempted plaintiff's claims for intentional infliction of emotional distress. In *Peterson*, the facts were in dispute between the parties; however, the plaintiff's version of the facts must be assumed to be correct for the purpose of the motion. Plaintiff's version of the facts was that plaintiff was traveling with her niece and nephew to attend a family funeral. Continental overbooked the flight and requested volunteers to relinquish their seats in exchange for financial compensation and hotel accommodations. Plaintiff did not volunteer to relinquish her seat. Another passenger boarded the plane and was assigned the same seat as plaintiff. A supervising flight attendant examined plaintiff's ticket and asked Peterson to relinquish her seat and advised her that she would be flown out on a later flight. Plaintiff declined this request.

A second flight attendant then approached plaintiff and without discussion or investigation informed plaintiff that she had to leave the airplane and would be physically removed if she refused to do so. Plaintiff asserted that despite her many requests for information, she was never advised as to why she was being asked to leave. Eventually the police were summoned by the airline and, without provocation or warning, four police officers lifted her from her seat, handcuffed her and forcibly removed her from the airplane.

[14]

Plaintiff commenced an action asserting, among other things, negligence, breach of contract and civil rights violation pursuant to 42 USC section 1983. Continental brought a motion to dismiss the complaint asserting that the plaintiff's claims were preempted by the ADA. The _Peterson_ Court held that the resolution to the preemption issue hinged on the definition of the phrase "relating to service" in the ADA clause which provides that a state "may not enact or enforce a law or regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation…." 49 USC section 41713(b)(1). The _Peterson_ Court acknowledged the Supreme Court's caution against finding preemption in cases where the state's law's impact on an air carrier's service is "tenuous, remote or peripheral." _Morales v. Trans World Airlines, Inc., 504 US 374 at 390, 112 S. Ct. 2031 at 2040, 119 L.Ed. 157 (1992)_ quoting _Shaw v. Delta Airlines, Inc., 463 US 85, 100 n.21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)._

In examining the preemption issue, the Peterson Court relied upon the three-part test to determine whether preemption is warranted that was articulated in _Romborn v. United Airlines, Inc., 187 F. Supp. 867 F. Supp. 214 at 221 (SDNY 1994)_. The threshold inquiry in deciding whether state claims against an airline are preempted by section 41713 is whether the activity at issue is an airline service. _Id_. If it is determined that the activity is not an airline service for section 41713 purposes then the preemption inquiry ceases and the state claims are actionable. _Id_ at 222. If the activity implicates an airline service, the court must address the second prong which is whether plaintiff's claims affect the airline industry directly as opposed to "tenuously, remotely or peripherally." _Id_.

If the state claims have only an incidental effect on the airline industry, there is no preemption. The third prong of the test examines whether the underlying tortuous conduct was reasonably necessary to the provision of service. *Id*.; *Curley v. American Airlines, Inc.* 846 F. Supp. 280, 284 (SDNY 1994).

Thus, the *Peterson* Court held that "…Section 41713 cannot be construed in a way that insulates air carriers from liability for injuries caused by outrageous conduct that goes far beyond the scope of normal aircraft operation." 970 F. Supp at 250 citing *Curely v. American Airlines, Inc.*, supra. If in contrast the service was provided in a reasonable manner, then preemption is appropriate. *Id*.

This Court held that the first prong of the test for preemption was satisfied in *Peterson*. However, this Court held that whether the requirements of the second prong were satisfied proved to be more difficult.

> "Continental argues that Peterson's allegations are based merely on the manner in which the flight attendants provided this service [i.e. efforts to locate appropriate seat assignments and resolve seat conflicts], and thus, that her tort claims affect the service directly rather than tenuously. Such an interpretation of Peterson's claims weighs in favor of preemption. Yet the very nature of Peterson's allegations, i.e. intentional infliction of emotional distress and civil rights violations, suggest that Continental acted outside the scope of its authority. Thus, because Peterson's claims are based on the notion that Continental abused its authority to provide a given service, preemption under Section 41713 is not warranted." *Id*. Citing *Romborn v. United Airlines, Inc.*, 867 F. Supp at 224.

This Court then went on to reason that:

> "Even assuming that Peterson's claims directly implicate as airline service, Continental's preemption argument fails under the third prong of the inquiry because the issue of whether Continental acted reasonably remains in dispute. Under Peterson's version of the facts surrounding her arrest, Continental cannot be said to have provided any airline service in a reasonable manner….Peterson argues that …the flight crew acted in an

abusive, unprofessional and malicious manner. As such Peterson's claims allege "outrageous conduct that goes beyond the scope of normal aircraft operations'." Id. Citing _Doricent v. American Airlines, Inc.,_ No. 91 Civ. 12084Y, 1993 WL 437670, at 5 (D. Mass. Oct. 19, 193)(no preemption because plaintiff's claims of racial discrimination, the intentional infliction of emotional distress, and assault and battery have nothing whatsoever to do with any legitimate or quasi-legitimate industry-wide practice of affording airline service); _Diaz-Aquasviva v. Iberia Lineas Aeras de Espana_, 902 F. Supp. 314, 319 (D.P.R. 195) ("tortious conduct of an airline is not a regular or typical service provided by the airline industry"), acted in part on reconsideration on other grounds, 937 F. Supp. 141 (D.P.R. 1996).

In examining the case at bar, it is respectfully submitted that the first prong of the test – whether the activity at issue is an airline service – is satisfied. A flight crew making appropriate and reasonable arrangements in order to accommodate a "disabled" passenger and providing food during the flight are allegedly airline services within the meaning of section 41713. However, just as in the _Peterson_ case, Plaintiffs' claims of intentional infliction of emotional distress and civil rights violations suggest that AA acted outside the scope of its authority and/or abused its authority thereby resulting in preemption being not applicable. Indeed, the complaint alleges specific conduct which established that AA outside the scope of its own policies and federal regulations governing the conduct of carrier personnel.

Moreover, and again as reasoned by the _Peterson_ court, even assuming that Plaintiff's claims herein directly implicate an airline service, AA's preemption argument fails under the third prong of the inquiry because the issue of whether AA acted reasonably is an issue of fact. Plaintiffs' version of the facts is that AA's agents acted in "an unreasonable and outrageous" manner that "went well beyond the scope of normal aircraft operations," (see para. "47" of the Complaint) and "were so abusive,

[17]

unprofessional, extreme and outrageous so as to be intolerable to a civilized society."
(see para. "50" of the Complaint) Moreover, Plaintiffs' complaint alleges that AA's
conduct specified in the Complaint "were so extreme in degree and outrageous in
character so as to exceed all bounds of decency." (see para. "51" of the Complaint).

Accordingly, following the holding and rationale of this Court in *Peterson*,
Plaintiffs' claims are not merely of acts of rudeness on the part of AA's crew but are
outrageous and unreasonable actions which remove the acts of AA's crew from the
scope of a "service" within the meaning of preemption under section 41713. Thus,
following this Court's holding and reasoning in *Peterson*, AA's motion to dismiss must
be denied in its entirety. Further, as was noted by this Court in *Peterson*, such a
determination of denying AA's motion herein:

> "…comports with the decisions in other cases in this Circuit which have
> addressed the issue of preemption for claims based on airline services.
> For example, in *Pittman v. Grayson*, 869 F. Supp. 1065, 1072-73 (SDNY
> 1994), the district court found preemption inappropriate where the plaintiff
> sued an airline alleging, inter alia, intentional infliction of emotional
> distress and false imprisonment. In so finding, the court noted that 'actions
> in which plaintiffs invoke traditional elements of tort law…overwhelmingly
> incline against federal preemption.' Id.; see also *Curely v. American
> Airlines, Inc., 846 F. Supp. at 284* (plaintiff's state law claims of negligence
> and false imprisonment, based on fact that captain informed ground
> personnel about passenger smoking habit, not preempted since such
> claims are based on conduct that is only tenuously related to airline
> services); *Sedigh v. Delta Airlines, Inc., 850 F. Supp. 197, 200 (EDNY)* (no
> preemption of claims of intentional infliction of emotional distress and false
> imprisonment arising out of captain's alleged verbal and physical abuse of
> passenger.) *Peterson,* 970 F. Supp. at 251.

Finally, and again as reasoned by this Court in *Peterson*, denying AA's motion to
dismiss this action as preempted is consistent with the policy underlying the preemption
clause of section 41713.

> "Section 41713 is an economic deregulation statute designed to promote competitive rates, routes and services among the nation's airlines. (citations omitted) Peterson's state law tort action neither frustrates the goal of economic deregulation in the airline industry nor significantly affects Continental's competitive posture. Peterson is alleging intentional torts 'which represent the civil offspring of criminal behavior' (citation omitted). The ADA is not intended to be a 'safe harbor for airlines from criminal prosecution for civil analogues of criminal offenses.' (citation omitted)" _Peterson_, 970 F. Supp. at 251.

Accordingly, based upon the above, it is unequivocally clear that AA's motion to dismiss, alleging preemption, must be denied in its entirety.

### PLAINTIFFS' SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT SHOULD NOT BE DISMISSED INASMUCH AS AA BREACHED ITS OWN POLICY REGARDING THE SERVICE OF PEANUTS.

AA argues in support of its motion to dismiss that AA did not breach its own policy concerning the service of peanuts and cites to a portion of its policy that it annexes as exhibit "B" to its motion papers. However, and not surprisingly, AA fails  to recite other relevant portions of its policy statement which it annexes to its motion which supports the denial of AA's motion. First, AA's policy specifically deals with "Customers with Disabilities" and it is undisputed that Plaintiff Ryahn is considered disabled as per the ACAA. AA's policy is that:

> "American Airlines and American Eagle endeavor to provide passengers with disabilities dignified, professional, and courteous service at all times." (See p. 10 of AA's Policy statement annexed as exhibit "B" to AA's motion papers.)

From the allegations in Plaintiffs' complaint, it is clear that the flight crew did not treat Plaintiffs in a dignified, professional and courteous manner. As such, AA clearly

[19]

breached its own policy relating to passengers with disabilities.  Thus, this is enough to warrant denial of AA's motion to dismiss.

Furthermore, on AA's webpage "Planning Ahead" (also part of exhibit "B" to AA's motion papers) AA declares that "…we do not serve peanuts…" The alleged fact that AA supposedly does not serve peanuts aboard its flights in recognition of those passengers to are allergic to peanuts is confirmed by the Food Allergy & Anaphylaxis Network (FAAN) which provides on its webpage that "based upon correspondence with airline representatives, FAAN has concluded that the following airlines do not serve individual packages or bags of peanuts: …American…" (see www.foodallergy.org/advocacy/airlines.) Yet, despite AA's own policy that it does not serve peanuts, it in fact served peanuts during Plaintiffs' flight. Clearly then, AA breached its own policy relating to the service of peanuts during its flights.

While AA argues that recovery for purely emotional distress is limited and allegedly unavailable here, AA's own motion papers establish the availability for such recovery here. In its own moving papers AA concedes that a plaintiff suffering from pure emotional injury may recover under a theory of negligent infliction of emotional distress (it should be noted that Plaintiff's herein are not alleging negligent infliction of emotional distress but rather intentional infliction of emotional distress and emotional distress resulting from AA's intentional breach of its own policy statement) if the defendant breaches a direct duty to the plaintiff which results in emotional injury to the plaintiff citing to _Stephens v. Shuttle Associates, LLC,_ 547 F. Supp. 269 (SDNY 2008) (See p. 10 of AA's Memorandum of Law submitted in support of its motion.) As detailed above,

inasmuch as Ryahn is disabled, AA owed Ryahn a duty under its own policy to treat him in a specific manner and inasmuch as AA had a policy not to serve peanuts, it owed Ryahn a duty not to serve peanuts during the flight. AA breached those policies and is liable for damages resulting therefrom.

AA argues that to establish a claim for 'direct duty' liability, Dr. Haque must show that "she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Id.* (citing *Kennedy v. McKesson Co.,* 58 N.Y.2d 500, 504, 462 N.Y.S.2d 421, 448 N.E.2d 1332 (1983) and *Green v. Leibowitz,* 118 A.D.2d 756, 500 N.Y.S.2d 146, 148 (N.Y.App.Div.1986)). However, with respect to the emotional distress suffered by Dr. Haque, AA overlooks New York law which recognizes a cause of action where there exists "an especial likelihood of genuine and serious mental distress, arising from ... special circumstances, which serves as a guarantee that the claim is not spurious." *Baker,* 239 F.3d at 421 (citing *Johnson v. State,* 37 N.Y.2d 378, 372 N.Y.S.2d 638, 642, 334 N.E.2d 590 (1975)); see also *In re Air Crash at Belle Harbor, N.Y. on November 12, 2001* 508 F.Supp.2d 244 (S.D.N.Y.,2007). This 'guarantee of genuineness' theory of recovery is effectively an alternative manifestation of the 'direct duty' theory. See *In re Air Crash at Belle Harbor, supra.*

The key to liability here is AA's duty to comply with its own policy not to serve peanuts during its flight and to correctly relay that policy to Dr, Haque upon her inquiry which AA failed to do in its several telephone calls with Dr.Haque when she booked the flight for her family and again at the airport and when Dr. Haque and her family boarded

the flight. Certainly, AA cannot take the position that the duty to correctly relay its policy with respect to the service of peanuts during its flight was a duty owed to four year old Ryahn especially in light of the fact that AA's flight crew addressed all their inquiries, statements and reading of disclaimer statements to Dr. Haque, not to Ryahn. Clearly, such a duty to correctly relay its policy information concerning the service of peanuts aboard its flights is owed to Ryahn's legal guardian – Dr. Haque – so that she may make all necessary decisions, and take all necessary measures, to protect her son. AA cannot be permitted to evade liability here for it's blatantly tortious conduct simply because of the fact that the disabled person involved herein is an infant minor.

Thus, AA's motion to dismiss must be denied in its entirety.


## PLAINTIFFS' SECTION 1983 CIVIL RIGHTS VIOLATION CLAIM IS PROPER


First, it is important to clarify that, contrary to AA's allegation, Plaintiffs are not claiming damages as a result of AA's breach of the ACAA.  Plaintiffs relied upon ACAA solely to establish that Plaintiff Ryahn is, as a result of his severe tree nut allergy, disabled under the ACAA.  Plaintiffs' third cause of action is simply for damages as a result of AA's violation of Ryahn's Civil Rights protected under 42 USC section 1983. The fact that this is a viable actionable claim is evident from the fact that this court allowed this very claim to stand when faced with a motion to dismiss in the *Peterson*, supra, case.

[22]

Further, it is undisputed that AA requires a federally issued tariff in order to operate its airline which tariff it subsequently incorporates into its Conditions of Carriage. (See exhibit "B" to AA's motion papers.) Such tariff incorporates the requirements of the Department of Transportation set forth in 14 CFR Part 382 – Nondiscrimination on the Basis of Disability in Air Travel. Section 382.7 (c) provides in relevant part that "Carriers shall modify policies, practices or facilities as needed to ensure nondiscrimination…". Section 382.33(a) provides, in relevant part, that "…a carrier shall not require a qualified individual with a disability to provide advance notice of his or her intention to travel or of his or her disability as a condition of receiving transportation or of receiving services or accommodations required by this part." Section 382.45(b)(3) and (4) provides, in relevant part, that "Individual safety briefings for qualified individuals with a disability shall be conducted as inconspicuously and discretely as possible; Carrier personnel shall not require any qualified individual with a disability to demonstrate that he or she has listened to, read, or understood the information presented."

Thus, AA's flight crew's actions in dealing with Plaintiffs during the flight in question was an attempt (albeit a failed attempt) to act under color of DOT authority to comply with its own tariff and DOT regulations. In utterly failing to comply with DOT regulations and discriminating against Plaintiff Ryahn because of his disability AA violated Ryahn's civil rights. As such, AA's motion to dismiss must be denied in its entirety.

## **CONCLUSION**

Based upon all of the foregoing, it is respectfully submitted that AA's motion to

Dismiss must be denied in its entirety and that Plaintiffs should be granted such other,

further and different relief as to this Court seems just and proper.

Dated: Melville, New York           LAW OFFICES OF KENNETH M. MOLLINS, P.C.
      August 27, 2008              Attorneys for Plaintiffs
                                         By: _____
                                            Kenneth M. Mollins, Esq.
                                       425 Broadhollow Road, Suite 205
                                       Melville, New York, 11747
                                       (631) 608-4100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
RYAHN KHAN, an infant by his mother and natural
Guardian, DR. TEHMINA HAQUE, and Dr. TEHMINA
HAQUE, individually,

**Docket No.
08 CV 5246
(NRB)**

                              Plaintiffs

**AFFIDAVIT
OF
SERVICE**

                         -against-

AMERICAN AIRLINES, INC.

                              Defendant.
-----------------------------------------------------------------------X
STATE OF NEW YORK     )
                              ss.:
COUNTY OF SUFFOLK     )


        MICHELLE CURRY being duly sworn, deposes and says:  I am not a
party to the within action, am over 18 years of age and reside in Nassau
County, New York.
        On September 2, 2008, I served a copy of the **PLAINTIFFS'
MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS** by
depositing same in an official depository under the exclusive care and custody
of the United States Postal Service within the State of New York, addressed to
each of the following persons at the last known address set forth after each
name:


To:     RUTHERFORD & CHRISTIE
        Attorneys for Defendants
        369 Lexington Avenue
        New York, NY 10017
        (212) 599-5799


                                        _____
                                        MICHELLE CURRY


Sworn to before me this
2nd day of September, 2008.


_____
NOTARY PUBLIC